Juan RIOS, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–04–00795–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 17, 2005.
Discretionary Review Dismissed
March 1, 2006.

3

Emily Munoz–Detoto, Muniz Law Office,
Patrick F. McCann, Law Office of Patrick
F. McCann, Houston, for Appellant.

Charles A. Rosenthal, Jr., Dist. Attor-
ney–Harris County, Kevin P. Keating,
Asst. Dist. Atty., Houston, for Appellee.

Panel consists of Chief Justice
RADACK and Justices ALCALA and
BLAND.

## OPINION

JANE BLAND, Justice.

Appellant Juan Rios pleaded not guilty to the charge of aggravated robbery. A jury found Rios guilty and assessed punishment at thirty years' imprisonment and a $3,000 fine. On appeal, Rios contends, with respect to the guilt/innocence phase of the trial, that (1) the evidence is legally and factually insufficient to sustain his conviction; (2) the trial court erred in admitting fingerprint testimony where the State failed to give adequate notice; (3) the trial court erred in admitting testimonial hearsay; and (4) the trial court erred in admitting accomplice testimony without sufficient corroboration. Concerning the punishment phase of the trial, Rios contends that the trial court erred in (1) admitting evidence of an unreliable pretrial identification; (2) failing to require an affirmative finding of guilt beyond a reasonable doubt on unadjudicated extraneous offenses at punishment; and (3) submitting an ambiguous parole instruction to the jury. We affirm.

## I. FACTS

In April 2003, Marcia Escobar and Karla Mejia picked up their aunt, Carmen Escobar, from work. A car followed them into Carmen's apartment complex. When the women stopped near Carmen's unit, the car behind them stopped as well, and three men wearing masks and bearing guns exited the car and approached the women's vehicle. The men began hitting the windows of the vehicle with their hands, telling the women to open the doors, and one of the men used a machete to break out the rear window. When the women unlocked the doors, one of the men entered the car and pointed his gun at Karla while another man put his gun in Carmen's mouth and demanded her jewelry. When Carmen struggled, the man broke one of her teeth with the gun and yanked her earrings out of her ears. The women's screams appeared to make the assailants nervous, so after a few minutes, the men returned to their car and left, taking with them the earrings, a cell phone, and the keys to the women's vehicle.

The first officer to arrive on the scene did not speak Spanish, and the victims did not speak English, so the officer called a wrecker driver in the area whom he knew to be fluent in both languages. With the help of the wrecker driver, the officer obtained statements from the victims. After the victims told the officer where their assailants struck their car windows, police recovered fingerprints. Police later matched the fingerprints to Rios, Jose Matutes, and Henry Martinez. The victims identified Matutes and Martinez in a photo array, but none of them could identify Rios.

At trial, Matutes testified to Rios's involvement in the robbery. The victims testified to the details of the robbery. Over Rios's hearsay objection, the first officer to arrive on the scene testified to the contents of the statements made to him by the complaining witnesses, as translated by the interpreter. Also over Rios's objection, a fingerprint expert testified that the fingerprints found on the victims' car matched the fingerprints of Rios, Matutes, and Martinez found in the Automated Fingerprint Identification System ("AFIS"), and matched the fingerprints taken from Rios during the course of the trial. Another officer testified that he later pulled Rios over with his two co-defendants in a vehicle containing a revolver and two ski masks. The jury found Rios guilty of aggravated robbery.

During the punishment phase of the trial, the State presented evidence that Rios previously had been identified from a pho-

to array as the perpetrator of a similar robbery a few months earlier. The trial court denied Rios's motion to suppress the testimony, finding that it was the not the result of an overly suggestive photo array.

## II. GUILT/INNOCENCE PHASE OF TRIAL

### A. Admission of Fingerprint Expert Testimony

In his first issue, Rios contends the trial court erred in allowing expert testimony comparing Rios's fingerprints to those recovered from the crime scene because the State failed to give adequate notice of the content of such testimony. During a trial recess, an expert fingerprinted Rios, and immediately after the recess Rios's counsel objected "Judge, before they come in, just for the record, my client, Juan Rios, was just fingerprinted by Deputy Davis, which again I reurge my objection as to him having done that to him." Though this objection appears to renew an earlier objection, Rios does not point us to the initial objection in his brief, and we are unable to find any earlier objection in the record. Defense counsel did not object to the admission of Exhibit 39, the latent fingerprint card that linked Rios to the scene. The trial court overruled counsel's objection, and the expert testified, without further objection, that the fingerprints he had just taken from Rios matched those found on the victims' car.

■ On appeal, Rios argues not that his fingerprints were improperly taken or admitted, but rather that he was not given adequate notice that the expert would testify that Rios's fingerprints taken during the trial recess matched fingerprints taken from the crime scene. The State contends that the objection made at trial differs from the argument made on appeal, and,

thus, that any error in the admission of the testimony is waived. We agree.

■ To preserve a complaint for appellate review, a defendant must make a timely, specific objection to the trial court. TEX.R.APP. P. 33.1(a); *see Wilson v. State,* 71 S.W.3d 346, 349 (Tex.Crim.App.2002). It follows that an objection stating one legal basis may not be used to support a different legal theory on appeal. *See Heidelberg v. State,* 144 S.W.3d 535, 537 (Tex. Crim.App.2004). Courts have routinely held that where a complaint on appeal does not comport with an objection made at trial, the error is not preserved on the complaint. *Wilson,* 71 S.W.3d at 349; *Goff v. State,* 931 S.W.2d 537, 551 (Tex.Crim. App.1996); *Flores v. State,* 125 S.W.3d 744, 747 (Tex.App.-Houston [1st Dist.] 2003, no pet.). An objection is sufficient to preserve error for appellate review if the objection communicates to the trial judge what the objecting party wants and why the objecting party thinks himself entitled to relief. *Lankston v. State,* 827 S.W.2d 907, 909 (Tex.Crim.App.1992). To preserve error where objectionable testimony is involved, a party must object every time the allegedly inadmissible testimony is offered. *Johnson v. State,* 84 S.W.3d 726, 729 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd) (*citing Ethington v. State,* 819 S.W.2d 854, 858 (Tex.Crim.App.1991)).

Rios failed to object when Deputy Davis, the fingerprint expert, took the stand, he failed to object to any of the State's questions, and he failed to object when Davis stated that Rios's fingerprints matched those found at the scene. The only objection at trial, that the fingerprints taken during the trial should not be admitted, is completely different from the argument on appeal, that the State did not provide adequate notice of Davis's testimony.[1] Rios's

---

1. We note that the State provided notice nine months prior to trial that it planned to call a

objection to Davis fingerprinting him was not sufficient to preserve error as to any lack of specific notice that Davis would testify as an expert witness about them. Rios did not object on the ground of insufficient notice at trial, so we cannot consider the merit of such an argument here. Accordingly, Rios waives any error.

## B. Admission of "Testimonial Hearsay"

In his second issue, Rios contends his Sixth Amendment right to confrontation was violated because he was unable to cross-examine the wrecker driver who served as an interpreter at the scene regarding his translation of the complaining witnesses' statements. Rios contends that the translation constitutes testimonial hearsay and thus the trial court erred in allowing the responding officer to testify about the complaining witnesses' statements at the scene, as he heard them through the absent interpreter.

When Deputy Klosterman, the responding police officer, arrived on the scene, he called a wrecker driver whom he knew to be fluent in Spanish to translate the witnesses' descriptions of the events. Klosterman testified directly about the witnesses' statements at the scene. Rios objected to Klosterman's testimony twice on hearsay grounds, and the trial court overruled the objection both times based on the excited utterance exception. *See* TEX.R. EVID. 803(2) (defining excited utterance exception). Klosterman did not identify the interpreter in his offense report, but he did testify at trial that his name is Alex Chappa. During cross-examination, Rios questioned Klosterman concerning his reliance on Chappa's inter-

pretation of the witnesses' statements, but he never objected on Confrontation Clause grounds, nor did he attempt to call Chappa to the stand to question him. Furthermore, Rios had the opportunity at trial to cross-examine each of the witnesses whose statements Chappa translated because those witnesses testified at trial.

On appeal, Rios contends that the State's failure to disclose Chappa's identity prior to trial, or to call Chappa to the stand during trial, violates *Crawford v. Washington*, because Chappa's statements "were made under circumstances which would lead an objective witness reasonably to believe that the statement[s] would be available for use at a later trial." 541 U.S. 36, 52, 124 S.Ct. 1354, 1364, 158 L.Ed.2d 177 (2004). The State responds that the hearsay objection made at trial is insufficient to preserve error on the confrontation issue, and we agree.

Generally, a timely, specific objection is required to preserve even constitutional error for appeal. TEX.R.APP. P. 33.1; *see Wilson*, 71 S.W.3d at 349. Before *Crawford*, it was well settled that a hearsay objection at trial would not preserve a Confrontation Clause argument for appeal. *See Holland v. State*, 802 S.W.2d 696, 700 (Tex.Crim.App.1991); *Thacker v. State*, 999 S.W.2d 56, 61 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd); *Saldivar v. State*, 980 S.W.2d 475, 496 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd). We conclude that after *Crawford*, the requirements for preserving error in cases involving testimonial hearsay should remain the same, as *Crawford* did not address preservation of constitutional error.[2] *See Reyna v. State*,

---

fingerprint expert to testify to taking and identifying unknown prints and matching them to known prints.

2. In *Crawford*, the defendant preserved error by objecting on confrontation grounds at trial. *Crawford*, 541 U.S. at 36, 124 S.Ct. at 1355.

168 S.W.3d 173, 179 (Tex.Crim.App.2005) (holding raising hearsay issue does not preserve error on Confrontation Clause issue); *Bunton v. State,* 136 S.W.3d 355, 369 (Tex.App.-Austin 2004, pet. ref'd) (holding there is "nothing in *Crawford* that would excuse appellant for failing to make a confrontation claim at trial"); *Oveal v. State,* 164 S.W.3d 735, 739 n. 2 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (approving of *Bunton*); *Crawford v. State,* 139 S.W.3d 462, 464 (Tex.App.-Dallas 2004, pet. ref'd) (same). Accordingly, Rios's failure to object on confrontation grounds at trial waives this argument on appeal.

## C. Corroboration of Accomplice Testimony

In his third issue, Rios contends the testimony linking his fingerprints to those found on the victims' vehicle is insufficient to corroborate the testimony of his accomplice, Jose Matutes, as required by TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005). Rios contends that without testimony from the three victims identifying him as one of the assailants, Matutes's statements are insufficient to uphold his conviction.

■ The Texas Code of Criminal Procedure requires that accomplice testimony be "corroborated by other evidence tending to connect the defendant with the offense committed." *Id.; Colella v. State,* 915 S.W.2d 834, 838 (Tex.Crim.App.1995). In weighing the sufficiency of corroborative evidence, we eliminate from consideration the testimony of the accomplice witness, and review the remaining evidence to determine if there is *some* evidence connecting the defendant with the offense. *St. Julian v. State,* 132 S.W.3d 512, 516 (Tex.App.-Houston [1st Dist.] 2004, pet. ref'd) (*citing Hernandez v. State,* 939 S.W.2d 173, 176 (Tex.Crim.App.1997)). The non-accomplice evidence need not establish guilt beyond a reasonable doubt, or

even directly link the defendant to the commission of the offense; the evidence need only tend to connect the defendant to the offense. *Id.* Though the accused's mere presence at the scene of the crime is insufficient to corroborate accomplice witness testimony, "evidence of such presence, coupled with other suspicious circumstances, may tend to connect the accused to the offense." *Dowthitt v. State,* 931 S.W.2d 244, 249 (Tex.Crim.App.1996).

■ Contrary to Rios's contention, the State offered a number of corroborative elements that satisfy the requirements of Article 38.14 of the Texas Code of Criminal Procedure. Deputy Davis testified that fingerprints taken from Rios matched latent fingerprints found on the window of the victims' car on the night of the offense. Detective Keen testified, before Davis ever took Rios's fingerprints, that fingerprints from the victims' car matched those of Rios, according to a reverse search in AFIS. Furthermore, all three victims testified that the assailants used their hands to hit the window of the car, and at least one of the victims told police where the window had been hit so they could retrieve the fingerprints. The victims also testified that the assailants wore ski masks and carried guns, and the State offered evidence that less than a month after the incident, police apprehended Rios with his two co-defendants in a vehicle containing a revolver and two ski masks. This evidence creates circumstances tending to connect Rios to the commission of the offense. Accordingly, we hold that the evidence sufficiently corroborates the accomplice witness testimony.

## D. Legal Sufficiency

Rios contends the evidence is legally insufficient to support his conviction because none of the witnesses positively

identified him, and the testimony of his co-actor was not adequately corroborated.[3]

In determining the legal sufficiency of the evidence, we review the evidence in a light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the criminal offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex.Crim.App.2004). Although our analysis considers all evidence presented at trial, we may not re-weigh the evidence or substitute our judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App.2000). Here, Rios was charged both as a principal and as a party to aggravated robbery, so the State had the burden to prove either that Rios (1) in the course of committing a theft intentionally or knowingly threatened or placed another in fear of imminent bodily injury or death and used or exhibited a deadly weapon, or (2) acted with intent to assist in the commission of the offense while encouraging, aiding, or attempting to aid others in committing the offense. TEX. PEN.CODE ANN. §§ 7.02(a)(2), 29.03 (Vernon 2003).

The State presented the testimony of accomplice Jose Matutes that Rios fully participated in the robbery and used a gun to threaten the victims. The State presented evidence that fingerprints found on the window of the complaining witnesses' car matched Rios's fingerprints. The complainants testified that all three of their assailants wore ski masks, and frightened them by hitting the windows of their car with their hands and brandishing guns. A police officer testified that he pulled over Rios and his co-defendants less than a month after the incident in a vehicle containing a revolver and two ski masks. The complainants also testified that their assailants took a pair of earrings, a cell phone, and the keys to the women's vehicle. When shown a photo array, one of the complainants was able to identify Rios's accomplice Matutes, and another complainant was able to identify Rios's other accomplice Martinez. Viewed in a light most favorable to the prosecution, we hold that the evidence is sufficient to permit a rational jury to find Rios guilty beyond a reasonable doubt.

### E. Factual Sufficiency

Rios contends the evidence is factually insufficient to support his conviction because the "highly suspicious" testimony linking fingerprints found on the victims' car to fingerprints taken from Rios during trial resulted in a manifestly unjust verdict.

In a factual sufficiency review, we view all the evidence in a neutral light, and we will set aside the verdict "only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met." *Escamilla*, 143 S.W.3d at 817 (*citing Zuniga v. State*, 144 S.W.3d 477, 483 (Tex.Crim.App.2004)). Although our analysis considers all the evidence presented at trial, the trier of fact is the exclusive judge of the facts, the credibility of the witnesses, and the weight to

---

3. In issue three, we have already overruled Rios's complaint concerning the adequacy of the corroboration of the accomplice's testimony under Article 38.14 as required by *Cathey v. State*, 992 S.W.2d 460, 462–63 (Tex. Crim.App.1999) (holding sufficiency review of accomplice-witness testimony is legislatively imposed, and thus constitutional legal and factual sufficiency standards do not apply). Accordingly, we do not perform a traditional legal or factual sufficiency review of that issue here.

be given to their testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App. 1986). We may not substitute our own judgment for that of the fact finder. *Johnson v. State*, 23 S.W.3d 1, 12 (Tex. Crim.App.2000). "[A] proper factual sufficiency review must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal." *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App.2003).

■ Rios contends the verdict is manifestly unjust because the State obtained fingerprint evidence during the trial. Thirty minutes before his testimony to the jury, a fingerprint expert took Rios's fingerprints, and compared them to the fingerprints recovered from the scene. That expert then testified that Rios's fingerprints matched those recovered from the complainants' car. Prior to this, however, another expert had testified that fingerprints found on the car matched Rios's fingerprints on file in the AFIS. One of the victims told police where her assailants hit the car with their hands, and that is where the police recovered the fingerprints belonging to Rios. In addition, an accomplice testified that Rios fully participated in the robbery. Viewed in a neutral light, we hold that the jury's verdict is not manifestly unjust or contrary to the great weight of the evidence.

## III. PUNISHMENT PHASE OF TRIAL

### A. Admission of Photo Identification Testimony

■ In his fourth issue, Rios contends the trial court erred in admitting evidence of a witness's pretrial identification of Rios from a photo array, which he claims was obtained under impermissibly suggestive circumstances and is therefore unreliable.

At the punishment phase of Rios's trial, Juana Estrada testified that she was the victim of a robbery similar to the one in this case. After a fingerprint recovered from Estrada's car was matched to Rios, a photo array was compiled including his photograph, along with photos of men with similar physical features. Estrada testified that two officers brought the array to her work and told her she had to identify one of the men in the photos as her assailant. Both officers testified, however, that they told her she did not have to pick any of the photos. Despite having told police that she never saw her assailant's face, when Estrada saw Rios's picture in the photo array, she indicated that it made her nervous, and identified him as her assailant. The trial court denied Rios's motion to suppress the photo array identification, but the court granted his motion to suppress any *in*-court identification by Estrada.

■ On appeal, Rios relies on *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), contending that Estrada initially claimed never to have seen her assailant, and thus her identification of him in the photo array is per se unreliable. When challenging the admissibility of pretrial identifications, a defendant has the burden to show, by clear and convincing evidence based on the totality of the circumstances, that the pretrial identification procedure was impermissibly suggestive, and that it created a substantial likelihood of irreparable misidentification. *Barley v. State*, 906 S.W.2d 27, 33–34 (Tex.Crim. App.1995) (*citing Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)). It is only after the court has determined that the procedures were impermissibly suggestive that it need consider the factors enumerated in *Biggers* to determine whether the reliability of the identification was affected. *Id.* at 34; *see*

*also Burkett v. State*, 127 S.W.3d 83, 86–87 (Tex.App.-Houston [1st Dist.] 2003, no pet.). Thus, we must first determine whether the photo array was so suggestive as to make Estrada's photo array identification of Rios inadmissible.

In reviewing the trial court's ruling on the admissibility of the array, we defer to the trial court's rulings on mixed questions of law and fact if they turn on the credibility of witnesses. *Loserth v. State*, 963 S.W.2d 770, 772 (Tex.Crim.App.1998). "[A] question 'turns' on an evaluation of credibility and demeanor when the testimony of one or more witnesses, if believed, is always enough to add up to what is needed to decide the substantive issue." *Id.* at 773. Here, whether to admit the photo array is a mixed question of law and fact turning on a credibility evaluation. At the hearing on the motion to suppress, Rios's only argument for the suggestiveness of the array was that the officers brought the array to Estrada's work and told her she had to select one of the men in the photographs as her assailant, thus making Estrada feel "some pressure." If the trial court believed the police officers' testimony that Estrada was never told she had to select one of the photographs, Rios presents no other evidence to support an argument that the array was suggestive. We defer to the trial court's evaluation of the credibility and the demeanor of the witnesses regarding whether Estrada was told she had to select a photograph. *See id.* Rios thus did not prove by clear and convincing evidence that the array was

impermissibly suggestive.[4] Accordingly, we overrule Rios's fourth issue.

## B. Affirmative Finding of Guilt on Unadjudicated Extraneous Misconduct

In his fifth issue, Rios contends the trial court erred in failing to require the jury to make an affirmative finding of guilt beyond a reasonable doubt as to the unadjudicated extraneous offenses.[5] At punishment, the State introduced evidence of an unadjudicated extraneous offense of a similar aggravated robbery for which Rios had been charged but not convicted. The trial court instructed the jury as follows:

> You may consider evidence of an extraneous crime or bad act in assessing punishment even if the defendant has not yet been charged with or finally convicted of the crime or act. However, you may consider such evidence only if the extraneous crime or bad act has been shown by the State beyond a reasonable doubt to have been committed by the defendant or is one for which the defendant could be held criminally responsible.

Rios argues under *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), that the jury should have been required to make a specific finding beyond a reasonable doubt as a separate part of its verdict to be clear that the jury considered the extraneous act when assessing the sentence and found it proven beyond a reasonable doubt.

4. Although the trial court stated she found the array not to be impermissibly suggestive even assuming Estrada had been told to choose a photo, the court did not make findings of fact with regard to the motion to suppress. We thus uphold the trial court on any available ground. *Willover v. State*, 70 S.W.3d 841, 845 (Tex.Crim.App.2002).

5. Though Rios did not object at trial, under *Almanza*, we review the charge for egregious error. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984); *see also Bluitt v. State*, 137 S.W.3d 51, 53 (Tex.Crim.App.2004) ("Our case law is clear that when there is jury charge error, whether objected to or not objected to, the standard for assessing harm is controlled by *Almanza*.").

■ If the State offers evidence of extraneous offenses during the punishment phase of a trial, then the court must charge the jury that it can only consider such evidence if it finds beyond a reasonable doubt that the defendant committed the extraneous offenses. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp.2004–2005) (the State may offer "any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act"); *see Huizar v. State*, 12 S.W.3d 479, 483–84 (Tex.Crim.App.2000) (holding there is a statutory requirement that the jury find beyond a reasonable doubt that extraneous bad acts are attributable to the defendant before the jury can consider them in assessing punishment). *Huizar*, however, does not require a separate affirmative finding of guilt as to the extraneous offense. *Id.* In addition, *Blakely* holds that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, defined as the maximum the judge may impose without finding any additional facts, must be affirmatively found by the jury beyond a reasonable doubt. *Blakely*, 542 U.S. at 299–301, 124 S.Ct. at 2536; *Woods v. State*, 152 S.W.3d 105, 120 (Tex.Crim.App.2004).

■ Here, *Blakely* did not require the jury to make a separate affirmative finding of guilt on the extraneous offenses admitted during the punishment phase because the sentence sought by the State was within the statutory maximum possible sentence for the offense, and the jury assessed a punishment within that maximum. Rios was convicted of aggravated robbery, a first degree felony carrying a penalty of no less than five years and up to ninety-nine years or life imprisonment. TEX. PEN. CODE ANN. §§ 12.32(a), 29.03(a)(2) (Vernon 2003). Rios was sentenced to thirty years' imprisonment, a punishment well within the statutory punishment range. Accordingly, the trial court properly denied Rios's *Blakely* challenge.

## C. Ambiguity of Parole Instruction

In his sixth issue, Rios contends the trial court erred in submitting an ambiguous parole instruction to the jury. The jury was instructed concerning the effect of parole under Article 37.07, section 4(a) of the Texas Code of Criminal Procedure. Rios's counsel objected that he "never understood why it says although you cannot consider it, but—why even have it in there?" The trial court overruled the objection. On appeal, Rios contends the instruction contained in the statute is ambiguous and confusing because "the actual ability of a juror to not consider parole laws is completely unclear."

■ Rios's arguments against the parole instruction are without merit. First, there is no error in simply giving the legislatively mandated parole instruction found in Article 37.07. *Luquis v. State*, 72 S.W.3d 355, 363 (Tex.Crim.App.2002). To demonstrate error, a defendant must show there is a reasonable likelihood that the jury applied the challenged instruction in a manner violative of due process. *Id.* at 368. We generally presume the jury followed the trial court's instructions as given, and we will not reverse in the absence of evidence that the jury was actually confused by the charge. *Williams v. State*, 937 S.W.2d 479, 490 (Tex.Crim.App.1996); *Bui v. State*, 68 S.W.3d 830, 842 (Tex.App.-Houston [1st Dist.] 2002, no pet.). Here, Rios presents no evidence that the jury was confused by or misapplied the parole instruction, nor does he present any arguments as to why the charge itself is confus-

ing. The mere fact that Rios was eligible for community supervision because he had not been convicted of any other felonies does not create a reasonable likelihood that the jury was confused by or misapplied the parole instruction. Accordingly, we hold the trial court did not err in submitting the parole instruction to the jury.

## IV. CONCLUSION

We hold (1) Rios waived his argument that the State failed to give adequate notice of its intent to use a fingerprint expert to compare fingerprints taken from him during the trial because he did not object on that ground at trial; (2) Rios waived any *Crawford* argument by failing to object on confrontation grounds at trial; (3) the testimony of Rios's accomplice was sufficiently corroborated; (4) the evidence is legally sufficient to support the conviction; (5) the evidence is factually sufficient to support the conviction; (6) Rios did not provide clear and convincing evidence that the pretrial photo array was impermissibly suggestive; (7) the trial court properly instructed the jury during the punishment phase of trial on consideration of extraneous offenses; and (8) the trial court properly submitted the statutorily required parole instruction to the jury. We therefore affirm the judgment of the trial court.