In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-05-01005-CR

____________


CANDIDO SANTOS, Appellant

 

V.


THE STATE OF TEXAS, Appellee






On Appeal from the 179th District Court

Harris County, Texas

Trial Court Cause No. 764037 





MEMORANDUM OPINION


 A jury convicted appellant, Candido Santos, of murder and assessed
punishment at sixty years in prison. See Texas Penal Code Ann. § 19.02 (Vernon
2003). In his sole point of error, appellant contends the trial court erred in admitting
an out-of-court photo lineup because it impermissibly suggested appellant's identity
and tainted a subsequent in-court identification. We affirm.

Background

 On September 20, 1997, Luis Enrique Muraira drove with Antonio Ramos,
Juventino Silva, Ronju Jones, and Jose Hernandez to a Chevron gas station to 
purchase beer. Muraira and Ramos got out of the car and walked toward the station's
sales window. As Ramos approached the window, he noticed a maroon van parked
at the station and saw appellant walking away from the station window. As Ramos
passed appellant, they exchanged glances and appellant began to argue with Ramos. 
As their argument escalated, a fight broke out between Ramos and his friends and
appellant and his friends. 

 During the fight, one of appellant's friends got a shotgun from the maroon van
at appellant's request. Jones then ran to a nearby night club to call for help, and
Ramos, Hernandez, and Silva fled the scene. Appellant walked up to Muraira, held
the shotgun up to his chest, and shot him at point blank range. Appellant and his
friends fled in the van. Muraira died a week later from the gunshot wound. 

 Having linked appellant to the shooting by a near match of a license plate
number provided by Ramos, Houston Police homicide investigator Officer E. Mehl
created a photo array two days after the shooting. Mehl used a photograph of
appellant taken in 1994, and showed the array individually to Jones, Ramos, and
Silva. Jones and Ramos gave only a tentative identification of appellant from the
array, and Ramos commented that appellant "looked older and heavier" in the
photograph than at the scene of the offense. Silva was not able to identify appellant
from the photo array. 

 Concerned that the 1994 photo was an inaccurate depiction of appellant's
current appearance, Officer Mehl created a new photo array that same day, using a
Polaroid photograph of appellant that had been taken within the last year. The
Polaroid differed slightly from the other photographs in the new array because it had
been taken outside, it was lighter, and appellant wore a visible golden medallion
around his neck. But all of the males appeared to be of Hispanic origin and were of
similar physical type. Each man wore a baseball cap sideways on his head in a
manner that was similar to how appellant had placed his cap on his head. The
Polaroid of appellant was the only photograph that was common to the first and the
second array, and Officer Mehl placed appellant's photograph in a different position
in the second array. After viewing the second photo array that same day, Ramos
positively identified appellant, and Jones and Silva gave "strong tentative"
identifications. 

 At the pretrial hearing on appellant's motion to suppress, Ramos, Jones, and
Silva testified that the differences in the second array did not affect their
identification of the appellant, and that they identified him in the second array based
solely on recollection of his appearance on the night of the shooting. All three
witnesses confirmed that the investigating detectives did not suggest or indicate that
the witnesses select a certain photo, or any photo at all, from the first or second photo
array. The trial court denied appellant's motion to suppress the second photo array,
stating on the record that the array was "not unduly suggestive or otherwise
inadmissible."

 Ramos, Jones, and Silva identified the appellant at trial as the person who shot
Muraira. Each witness testified to having based in-court identification of appellant
on independent recollections of the offense. Admissibility of Pretrial and In-Court Identification 

 Appellant contends that the trial court denied his right of due process under the
Fourteenth Amendment of the United States Constitution because the cumulative
effect of the pretrial photo array and subsequent in-court identification improperly
influenced the jury. To challenge the admissibility of a pretrial identification, an
appellant has the burden to show, by clear and convincing evidence and based on the
totality of the circumstances, that the pretrial identification procedure was
impermissibly suggestive, and that it created a substantial likelihood of irreparable
misidentification. Barley v. State, 906 S.W.2d 27, 33-34 (Tex. Crim. App. 1995)
(citing Simmons v. United States, 390 U.S. 377, 88 S. Ct. 967 (1968)); Rios v. State,
2005 WL 3077220, *6 (Tex. App.--Houston [1st Dist.] 2005, pet. ref'd, untimely
filed). The court does not consider whether the procedures created a substantial
likelihood for irreparable misidentification unless the court has first determined that
the procedures were impermissibly suggestive. Barley, 906 S.W.2d at 33; Cantu v.
State, 738 S.W.2d 249, 251-52 (Tex. Crim. App. 1987). Therefore, we must first
determine whether the pretrial photo arrays containing appellant's picture were
impermissibly suggestive.

 In reviewing a ruling on the admissibility of the second photo array, we defer
to the trial court's rulings on mixed questions of law and fact if they turn on the
credibility of witnesses. See Loserth v. State, 963 S.W.2d 770, 772 (Tex. Crim. App.
1998). "[A] question 'turns' on an evaluation of credibility and demeanor when the
testimony of one or more witnesses, if believed, is always enough to add up to what
is needed to decide the substantive issue." Rios, 2005 WL 3077220, at *7 (alteration
in original) (quoting Loserth, 963 S.W.2d at 773). Because the trial court considered
the testimony of witnesses in deciding whether to admit the photo array in this case,
we defer to the court's credibility determinations. See id. Appellant contends the photo array was impermissibly suggestive for the
following reasons: (1) the witnesses were shown two different photo arrays on the
same day; (2) appellant was the only person who appeared in both arrays; (3)
appellant's photograph in the second array was distinguishable from the others in the
array because (a) it was taken outside, and (b) appellant was the only person wearing
jewelry. 

 Suggestiveness may arise from the manner in which a pretrial identification
procedure is conducted. Barley, 906 S.W.2d 27 at 33. For example, a police officer
might point out the suspect or suggest that the suspect's photograph is included in the
array. Id. In addition, the content of a lineup or photo array may be suggestive if the
suspect is the only individual who closely resembles the witnesses' description. Id. 
An identification may be suggestive based on a single procedure or because of the
cumulative effect of multiple procedures. Id.

 A procedure is not necessarily suggestive, however, solely because a witness
has been shown multiple photo arrays of a suspect. Cantu, 738 S.W.2d at 252. If a
suspect has "different looks" it may be necessary to show the witnesses multiple
pictures or arrays depicting the suspect's "different faces" or the suspect's change in
appearance over time. Id.; Barley, 906 S.W.2d at 33. 

 Under circumstances that are factually similar to this case, the Court of Criminal
Appeals held in Barley that a second photo array used in the defendant's capital
murder trial was not impermissibly suggestive. 906 S.W.2d at 34. In Barley, the
investigating police officer had shown three witnesses a photo array containing a
photograph of the defendant taken two years earlier, but no witnesses could identify
the defendant in the array. Id. at 31. Because the defendant's current appearance was
"noticeably different" from the picture in the first array, as here, the officer composed
a second photo array that contained a recent picture of the defendant. Id. at 32. In
contrast to the other photographs in the second array, the defendant's photograph had
been taken outside, which gave it a "definitive sunlight reflection" and a "more
pinkish tint." Id. at 33. After the investigating officer presented the second array to
the witnesses, each made a "strong tentative" identification of the defendant. Id. at
32. As here, the witnesses positively identified the defendant at trial, stating that they
based their in-court identification on what they observed during the course of the
offense. Id.

 Barley held that the defendant had failed to demonstrate clear and convincing
evidence that the second photo array was impermissibly suggestive. Id. at 33-34. At
no time did the investigating officers suggest or convey an instruction to any of the
three witnesses to select a specific photograph, or any photograph at all, from the first
or second array. Id. at 33. The Court of Criminal Appeals recognized that the second
array may have been necessary because of changes in the defendant's appearance in
the two years since the first picture was taken. Id. Though the defendant's
photograph was the only one that had been taken outside and had a pinkish tint, the
witnesses testified that they identified the defendant in both the picture and in-court
based on their independent recollections of him during the murder. Id. For these
reasons, the court concluded that the pretrial procedures did not influence the
witnesses' identification and, therefore, were not impermissibly suggestive. Id. at
33-34. 

 Like Barley, appellant did not meet his burden to show clear and convincing
evidence that the totality of the circumstances of the pretrial identification procedure
was impermissibly suggestive. Concerning his contention that his rights were
circumvented because his photograph was the only one that appeared in both the first
and second photo array, Barley recognizes that a second array may be necessary if, 
as here, the current appearance of a suspect differs from a photograph used in the
initial array. See id. at 33. The photograph of appellant used in the first array was
three years old. Officer Mehl described his concern that the photograph was not an
accurate depiction of appellant at the time of the offense, and Ramos testified that
appellant looked older and heavier in the photo than at the scene of the offense. 

 Appellant also argues that his photograph in the second array was suggestive
because it stood out among the others used in the array. Because the witnesses in
Barley testified that they had identified the defendant in the array based in their
recollections of the offense, rather than any distinctive features of the photograph, the
court rejected that same argument. Id. In this case, Ramos, Jones, and Silva testified
at both the pretrial hearing and at trial that they identified appellant based on their
independent recollections of the offense. Even if the pretrial procedure had been
suggestive, appellant presents no clear and convincing evidence that it was
impermissibly suggestive. 

 Therefore, we hold that appellant did not meet his threshold burden to present
clear and convincing evidence of a totality of circumstances showing that the second
photo array presented to the witnesses to identify appellant was impermissibly
suggestive. Accordingly, we need not address whether the procedures used to identify
appellant presented a likelihood of misidentification. See Barley, 906 S.W.2d at 33. 
 We overrule appellant's sole issue.

Conclusion


 We affirm the judgment of the trial court. 





 Sherry Radack 


 Chief Justice 


Panel consists of Chief Justice Radack and Justices Alcala and Bland.


Do not publish. Tex. R. App. P. 47.2(b).