Affirmed and Memorandum Opinion filed February 24, 2011.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00882-CR

___________________

 

Jonathan Edward Freeman, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 339th District Court

Harris County,
Texas



Trial Court Cause No. 1143836

 



 

 

MEMORANDUM OPINION

            In
this appeal of his conviction for the aggravated robbery of a convenience
store, Jonathan Edward Freeman argues that he was improperly convicted based
solely on the uncorroborated testimony of two accomplice witnesses.  Because we
conclude that this testimony was corroborated by other evidence tending to
connect appellant to the offense, we affirm. 

I  Factual and Procedural Background

            At about
10:00 p.m. on November 29, 2007, Rebecca Arredondo noticed that a gold
four-door car had backed into the driveway of her duplex.  As she watched, three
black male passengers exited the vehicle.  The men wore hats or hooded jackets
that covered their hair, and had covered part of their faces with bandanas or
similar material.  Arredondo saw that one of the men had a gun.  The men began
walking toward the nearby convenience store, and fearing that they intended to
rob it, she telephoned the police.  

            Pasadena police officer Joseph Gonzales
heard the dispatch call about a suspicious gold vehicle and drove into the convenience
store’s parking lot with his headlights off.  He saw at least two people
crouched outside the store, and when he saw the suspects hurry inside, he
called for assistance to respond to a possible robbery in progress.  

            Store owner Abdul Seth and one employee were
working at the convenience store that night when three black men with cloth
covering their faces entered.  While one man held the door, the other two
pointed guns at Seth and the employee.  After Seth complied with their demand
to give them cash from the register, at least one of the men grabbed cigars and
cigarettes before the three ran away.  As they ran from the store, Gonzales shone
a spotlight on them and saw three black males, at least two of whom were
carrying guns, run past his vehicle.  The men wore jeans and hooded jackets;
one of the jackets was red, and the others were dark-colored.  According to
Gonzales, each man wore “some kind of makeshift mask covering the lower portion
of the face.”  Gonzales followed the men in his marked vehicle as they ran past
a group of duplexes, but the men ran into a densely wooded area.  

            Meanwhile, Arredondo, who was on the
phone with police, reported that the gold car had pulled out of her driveway
and was turning.  Coincidentally, Gonzales, who was beginning to set up a
perimeter around the wooded area, also saw the gold vehicle exit the driveway
of a duplex.  He pursued the car, and the driver, Alegra Coleman, was detained
as she entered the driveway of the Garden View Apartments less than a half-mile
from the scene of the robbery.  

            While Coleman was being detained and
questioned, additional officers arrived at the convenience store.  Searching
the route the suspects had taken, they first found a discarded baseball cap and
a piece of black cloth in the convenience store’s parking lot.  A second piece
of black cloth and a white cotton headband were found in a clearing or field between
the wooded area and the fence separating the area from the Garden View
Apartments.  The fence had been partially cut and lifted, and the ground showed
signs that someone had passed through the barrier by sliding through the mud
below the cut.  A third piece of black cloth, tied as if worn as a mask, was
found at the fence line.

            Police next went to Coleman’s Garden View
apartment, where there they found three black males—appellant, his brother
Jarrell,[1]
and Coleman’s roommate Nicklaus Roberts.  On the dining table was a dark
hoodie, and under the table was a pair of muddy shoes.  Two pairs of pants, a dark
sweatshirt, and a set of coveralls were also smeared with fresh mud, a red
shirt and some of the muddy clothing was found behind a panel used to access
plumbing.[2] 
In the same concealed area, police found a semiautomatic pistol.  And on the living
room couch, police found another piece of black cloth and appellant’s wallet.  

            DNA was obtained and analyzed from the
baseball cap, the headband, and three of the four pieces of black cloth.[3]  Coleman was
identified as a possible major contributor of the DNA recovered from the
baseball cap found in the store’s parking lot.  Although appellant was excluded
as a major contributor of the DNA recovered from the cap and one of the pieces
of black cloth, he could not be excluded as a major contributor of the DNA
recovered from a second piece of material.  It is not clear from the record which
of these two pieces of fabric was found in the store parking lot and which was
found next to the fence line;[4]
however, the analysis of the cloth found in the clearing between the wooded area
and Garden View’s fence is identified in the record.  Appellant was identified
as a possible major contributor of the DNA recovered from this piece of cloth. 
The odds that this DNA came from an unrelated, randomly-selected individual are
no more than 1 in 26,390.[5] 


            Appellant was charged with aggravated
robbery, and Coleman and Roberts, who testified as accomplice witnesses at
appellant’s trial, implicated him in the robbery.  Appellant moved unsuccessfully
for an instructed verdict on the ground that the State failed to offer evidence
corroborating the accomplice-witnesses’ testimony.  The trial court informed the
jury that Coleman and Roberts were accomplice witnesses, and explained the
requirement for corroborating evidence.[6] 
The jury found appellant guilty of aggravated robbery, and he was sentenced by
the trial court to twenty-five years’ confinement in the Texas Department of
Criminal Justice–Institutional Division. 

            In the sole issue presented for review,
appellant contends that his conviction must be reversed because it was based
entirely on the uncorroborated testimony of Coleman and Roberts.  He argues
that when this evidence is excluded from review, there is nothing in the record
tending to connect him to the charged offense.

I.                  
Standard of Review

            Under
Texas law, a person cannot be convicted of an offense based solely on the
testimony of an accomplice.  Tex. Code
Crim. Proc. Ann. art. 38.14 (West 2005).[7] 
The evidence is insufficient to support conviction unless, in addition to the
accomplice-witness testimony, other evidence tends to connect the defendant to
the charged offense.  Id.  

            To ascertain whether the corroborating
evidence is sufficient, we ignore the accomplice-witness testimony and view the
remaining evidence in the light most favorable to the jury’s verdict.  Malone
v. State, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008); Batts v. State,
302 S.W.3d 419, 432–33 (Tex. App.—Houston [14th Dist.] 2009, no pet.).  If
there are two permissible views of the evidence, only one of which tends to
connect the appellant to the charged offense, we defer to fact-finder’s view of
the evidence.  Simmons v. State, 282 S.W.3d 504, 508 (Tex. Crim. App.
2009).  We then ask whether a rational fact-finder could conclude that the
non-accomplice evidence tends to connect the appellant to the offense.  Id. at
509.

            Because there is no precise rule as to the
amount of additional evidence required, we evaluate each case on its own facts.
 Dowthitt v. State, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996).  Corroborating
evidence must do more than show only that the offense occurred, but it need not
prove a defendant’s guilt beyond a reasonable doubt, Malone, 253 S.W.3d
at 257, or provide a direct link between the defendant and the crime.  Dowthitt,
222 S.W.3d at 249.  Suspicious circumstances that would be insufficient by
themselves to corroborate testimony may prove sufficient when considered with
other evidence.  Gill v. State, 873 S.W.2d 45, 49 (Tex. Crim. App. 1994)
(en banc).  For this reason, we look to all facts and circumstances—including
otherwise insignificant incriminating circumstances—when conducting our
review.  Yost v. State, 222 S.W.3d 865, 872 (Tex. App.—Houston [14th
Dist.] pet. ref’d).  Only then do we consider whether the combined
weight of the non-accomplice evidence tends to connect the defendant to the
offense.  Batts, 302 S.W.3d at 433.

III.  Analysis

            Excluding the accomplice-witness
testimony of Coleman and Roberts, there is ample evidence tending to connect
appellant to the robbery.  The gold vehicle appears to have been observed
without interruption from the time it first stopped in Arredondo’s driveway until
the driver, Alegra Coleman, was detained by police.  Arredondo saw three black
males wearing cloth masks exit the vehicle and approach the store, and Officer
Gonzales not only watched the men enter the store, but also followed them as
they ran away after the robbery until they entered a wooded area.  Although the
men were not observed between the time they entered the wooded area and the
time they were detained at Coleman’s apartment, they left behind them a trail
of makeshift masks.  The odds are remote that the DNA from the makeshift mask
found in the clearing between the wooded area and Garden View’s fence came from
someone other than appellant.  There also is evidence that the robbers slid
through the mud under the fence between Garden View and the wooded area, and at
Coleman’s apartment, police found clothes matching descriptions of those worn
by the suspects, soiled with fresh mud, and hidden with a gun.  Finally, on
Coleman’s couch, police found yet another piece of black cloth—together with
appellant’s wallet.  

            In brief, appellant’s argument that the
State offered no evidence corroborating the accomplice-witnesses’ testimony is
not supported by the record.  Appellant points out that no one other than the
accomplice witnesses placed him at the crime scene, but the absence of such
evidence is no barrier to conviction.  See Rios v. State, 263
S.W.3d 1, 7–8 (Tex. App.—Houston [1st Dist.] 2005, pet. dism’d) (finding that
accomplice testimony was sufficiently corroborated, even though no witness
positively identified the defendant because the suspects wore masks).  Appellant
also correctly points out there is no evidence that he wore any of the clothing
collected from Coleman’s apartment, but again, no such evidence is required.  See
Barnes v. State, 62 S.W.3d 288, 301 (Tex. App.—Austin 2001, pet. ref’d) (holding
that the accomplice’s testimony implicating defendant in a masked robbery was
sufficiently corroborated by circumstantial evidence and by a discarded ski
mask containing DNA matching the defendant’s profile).  Appellant also argues
that the accomplice-witness testimony is insufficiently corroborated due to the
lack of forensic evidence from the crime scene, but it is well-established that
circumstantial evidence, coupled with other suspicious circumstances, may tend
to connect a defendant to the crime.  See Trevino v. State, 991 S.W.2d
849, 851–52 (Tex. Crim. App. 1999) (en banc).

            Finally, appellant argues that the cloth
containing DNA consistent with his own was not found at the crime scene;
however, it was found within a few hundred yards of the store along the
suspects’ path of flight.  Moreover, it resembled not only the face coverings
described by three eyewitnesses, but also the cloth found near appellant’s
wallet in the accomplice witnesses’ apartment and the makeshift mask dropped by
one of the robbers in the convenience store’s parking lot.  Roberts, an accomplice-witness,
was identified as the possible major contributor of DNA recovered from that
mask, just as appellant was identified as the possible major contributor of DNA
recovered from the mask found in the clearing between the store and Garden
View’s fence.  

            Viewing the evidence in the light most
favorable to the jury’s verdict, we are satisfied that these circumstances tend
to connect appellant to the commission of the robbery.  See Gill, 873
S.W.2d at 49 (evidence that the accused was with the accomplice close to the
time of the crime, if coupled with other suspicious circumstances, can tend to
connect the defendant to the commission of the offense); Barnes, 62
S.W.3d at 301–02 (DNA from mask and other suspicious circumstances can
corroborate accomplice-witness testimony and link the defendant to the
commission of aggravated robbery by a masked gunman).  

            We therefore overrule appellant’s sole
issue on appeal.

IV.  Conclusion

            Because
the testimony of the accomplice-witnesses is corroborated by other evidence
tending to connect appellant to the commission of the charged offense, we
affirm the trial court’s judgment.

 

                                                                                    

                                                                        /s/        Tracy
Christopher

                                                                                    Justice

 

 

 

Panel consists of Justices
Brown, Christopher, and Jamison.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1] Jonathan Freeman’s
brother, Jarrell Freeman, was also tried and convicted in connection with the
same robbery.  To avoid confusion, Jonathan Freeman will be referred to as
“appellant,” and Jarrell Freeman will be referred to by his first name or
simply as appellant’s brother.





[2] The clothing was moved to
make it easier to photograph, and it is not clear from the record which items
were found in the living areas of the apartment and which were hidden behind
the access panel.





[3] Unlike the three pieces
of cloth found outdoors, the cloth found on the couch with appellant’s wallet
does not appear to have been offered as physical evidence, but seems to have
been identified at trial only in a photograph.





[4] Although the piece of
cloth found in the apartment near appellant’s wallet does not appear to have
been offered as an exhibit at trial, it is possible that one of the DNA samples
analyzed was obtained from this piece of cloth.





[5] These are the odds when
only the African-American population is sampled.  Only 1 in 59,840 Hispanics
and 1 in 68,960 Caucasians could have been possible major contributors of the
DNA obtained from this piece of cloth.  





[6] Coleman and Roberts were
indicted for their participation in the robbery for which appellant was tried
and convicted; thus, they are accomplices as a matter of law.  See Burns v.
State, 703 S.W.2d 649, 651 (Tex. Crim. App. 1985) (en banc).  





[7] “A conviction cannot be
had upon the testimony of an accomplice unless corroborated by other evidence
tending to connect the defendant with the offense committed; and the
corroboration is not sufficient if it merely shows the commission of the
offense.”