**Opinion issued May 28, 2015**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-00232-CR

_____

**ARTURO CHAVEZ, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 338th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1338052**

---

**MEMORANDUM OPINION**

A jury found Arturo Chavez guilty of the offense of first degree murder. *See*
TEX. PENAL CODE ANN. § 19.02 (West 2014). The trial court assessed his
punishment at life imprisonment. *Id.* § 12.32 (West 2014). On appeal, Chavez

contends that the non-accomplice evidence adduced at trial is legally insufficient to corroborate the accomplice testimony presented and to connect Chavez to the crime. He further contends that the evidence is legally insufficient to establish his guilt. We hold that the evidence is legally sufficient and therefore affirm.

## Background

In November 2004, Daniel Torres, Carlos Barrera, and Santiago Garcia worked for Chavez. One night, Garcia was shot and killed in a street near a Baytown park. The Baytown Police Department investigated the murder, but it never charged anyone with the commission of a crime.

About seven years later, in 2011, Detective Reyes from the Baytown Police Department received new information about the murder from an FBI agent. Reyes contacted Torres. During an interview with Reyes, Torres admitted to playing a role in the murder; he implicated Chavez and another person, Carlos Barrera. Torres pleaded guilty to a murder charge and agreed to testify for the State as an accomplice-witness in exchange for a recommendation of fifteen years in prison.

At Chavez's trial, Torres testified as an accomplice-witness. He testified Barrera shot Garcia but that Chavez had directed and planned the murder. As non-accomplice witnesses, W. Navarrete testified that he loaned Chavez a car that matched Torres's description of the getaway car used in the commission of the offense; F. Velasquez testified that Torres, Barrera, and Chavez tried to destroy a

2

gun on the night of the murder at Velasquez's house; and C. Benavidez testified about Chavez's actions on the night of the murder and his later conversations about it.

## Discussion

Chavez contends that the non-accomplice witness evidence adduced at the trial does not sufficiently corroborate Torres's testimony. He further contends that there is insufficient evidence to establish his guilt, but he similarly argues the sufficiency of the non-accomplice evidence to support his argument.

*Standard of Review*

Under article 38.14 of the Texas Code of Criminal Procedure, "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2013). "The test for sufficient corroboration is to eliminate from consideration the accomplice testimony and then examine the other inculpatory evidence to ascertain whether the remaining evidence tends to connect the defendant with the offense." *McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997) (citing *Burks v. State*, 876 S.W.2d 877, 887 (Tex. Crim. App. 1994)); *Rios v. State*, 263 S.W.3d 1, 7 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd). We consider the combined force of the non-

accomplice evidence that tends to connect the defendant to the offense. *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011) (citing *Mitchell v. State*, 650 S.W.2d 801, 807 (Tex. Crim. App. 1983)). The corroborating evidence need not be sufficient on its own to establish guilt; there simply must be other evidence that tends to connect the defendant to the crime. *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007). When there are two permissible views of the corroborating evidence, we defer to the jury's view of the evidence. *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009).

An accomplice is a person who participates in the offense before, during, or after its commission, with the requisite mental state. *Druery v. State,* 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). The accomplice witness "may be an accomplice as a matter of law or as a matter of fact." *Smith*, 332 S.W.3d at 439. A witness who is indicted for the same offense as the accused is an accomplice as a matter of law. *Id.* We examine the testimony adduced at the trial in light of these legal principles.

Under the standard of review for legal sufficiency challenges, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable

doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009).

*Analysis*

Torres is an accomplice as a matter of law because he was convicted of murder for his participation in the shooting pursuant to a plea bargain. *See id.* The trial court thus properly instructed the jury that Torres's testimony was accomplice-witness testimony and it could not convict Chavez without other evidence tending to connect Chavez to the offense. We examine the non-accomplice testimony first.

## 1. Non-accomplice Witness Testimony

First, W. Navarrete testified that he owned a green Impala in November 2004 and he knew Chavez, but did not know Barrera or Torres. Navarrete once loaned the Impala to Chavez but he did not remember the date of the loan. Chavez asked to borrow the car because someone owed him money, and he did not want to be seen in his own car. When Chavez picked up the car, Navarrete noticed two other people waiting in Chavez's car. Navarrete remembered that the car was returned to his driveway before 5:00 or 6:00 the following morning.

Second, F. Velasquez, Chavez's friend, testified that Chavez called him on November 14, 2004, the day before the murder. In the conversation, Chavez reported that Garcia had tried to break into his house. Later that night, early on

November 15, Chavez called Velasquez again and said, "[T]hey had killed Garcia." Chavez told Velasquez that Barrera and Torres were on their way to Velasquez's house in Beaumont. Barrera and Torres arrived at Velasquez's house about forty-five minutes later. Chavez, his family, and his brother also arrived at Velasquez's home. Chavez, his brother, Barrera, Torres, and Velasquez went into a tent on Velasquez's property. Inside the tent, Chavez tried to burn the gun with a plumber's torch; when it would not melt, Chavez took the gun apart. Chavez, Torres, and Barrera each took some of the parts, and Chavez threw a part of the gun in the water behind the house. Shortly afterward, everyone left Velasquez's house. Chavez told Velasquez that he planned to go to Mexico so that "everything would cool down."

Finally, Chavez's ex-wife, C. Benavidez, testified that Chavez woke her up in the middle of the night of the murder, telling her that they were not safe in the house and needed to leave. Chavez, Benavidez, and their children went to a hotel and stayed there for a few hours. Then they drove to Velasquez's house in Beaumont. Benavidez remained in the parked car outside the house, but she saw Barrera and Torres from the car. She saw Chavez, Barrera, Torres, and Velasquez go inside; she remained in the car for an hour or two. Chavez and Barrera then returned to the car. Chavez drove to a pier. On the way, Chavez and Barrera discussed Garcia's murder, stating that they did him a favor because he had been

6

doing drugs and he could be with his deceased father. When they arrived at the pier, Barrera exited the car and dropped an object into the water.

Later that day, Chavez, Benavidez, and their children left for Mexico. They returned from Mexico two months later. Chavez openly talked about the murder with other people in front of Benavidez during the years between the murder and the trial.

We hold that this non-accomplice evidence sufficiently connects Chavez to Garcia's murder. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14; *Smith*, 332 S.W.3d at 442; *Simmons*, 282 S.W.3d at 508. Navarrete testified that he lent his green Impala to Chavez overnight. Although he could not remember the date, the description of events corroborated Torres's testimony about the timing and circumstances of borrowing the green Impala. Velasquez's testimony about Chavez's attempts to destroy a gun on the night of Garcia's murder tends to connect Chavez to the crime. *See Castillo*, 221 S.W.3d at 691; *Miller v. State,* 177 S.W.3d 177, 184 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (attempting to hide evidence is circumstantial evidence of guilt). Benavidez's testimony that Chavez moved their family in the middle of the night to a hotel, then to Beaumont and Mexico, is evidence of Chavez's flight and consciousness of guilt. Velasquez similarly testified that Chavez planned to go to Mexico until everything calmed down after Garcia's murder. Evidence of a defendant's flight may tend to connect

him with a crime when combined with other corroborating circumstances. *See Hernandez v. State*, 939 S.W.2d 173, 178 (Tex. Crim. App. 1997) ("Evidence of flight and guilty demeanor, coupled with other corroborating circumstances, may tend to connect a defendant with a crime.") (citing *Burks*, 876 S.W.2d at 888); *Miller*, 177 S.W.3d at 184 (flight immediately after shooting is circumstantial evidence of guilt). Finally, Benavidez testified that Chavez took partial credit for the murder when he spoke with Barrera stating that they had done Garcia a favor by killing him.

Chavez relies on cases from the Texas Court of Criminal Appeals and our sister courts to argue that the non-accomplice witness testimony presented against him at most connects him with disposal of the gun after the murder, but does not tend to connect him with planning or participating in the commission of the offense. *See Druery,* 225 S.W.3d at 500; *Cruz v. State,* 690 S.W.2d 246, 250–51 (Tex. Crim. App. 1985); *Wincott v. State*, 59 S.W.3d 691, 698 (Tex. App.—Austin 2001, pet. ref'd). These cases are distinguishable from the facts presented in this appeal in that the evidence of participation was more limited in scope. In *Druery*, for example, the Court of Criminal Appeals held that a witness was not an accomplice to the charged offense of murder where the evidence was that he assisted in the disposal of the body and the murder weapon, but no evidence connected him with the commission of the crime. 225 S.W.3d at 500. In *Cruz,* the

8

court concluded that the defendant's flight alone was not enough to connect the defendant to the offense. 690 S.W.2d at 250–51. In *Wincott*, the court held that the non-accomplice testimony in that case connected the defendant to the accomplice and other suspects but did not connect him to the offense itself. 59 S.W.3d at 703. In contrast, the evidence non-accomplice witness evidence in this trial tended to connect Chavez both with planning the commission of the offense (by borrowing a vehicle that would not be recognized), his participation in it (his conversation with Barrera, within earshot of Benavidez, and statements to Velasquez that "they" had killed Garcia), as well as his efforts to destroy the gun and his flight to Mexico.

Having concluded that the non-accomplice evidence sufficiently connects Chavez with the murder, we review Torres's accomplice testimony together with the other evidence adduced at trial to evaluate the legal sufficiency of the conviction.

### 2. Torres's Testimony

A person commits the offense of murder if he "intentionally or knowingly causes the death of an individual" or "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." TEX. PENAL CODE ANN. § 19.02. "A person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to

9

promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2) (West 2014); *Nava v. State*, 415 S.W.3d 289, 293 (Tex. Crim. App. 2013).

Torres testified that Chavez engaged in smuggling immigrants from Mexico to Baytown, Texas. On November 14, 2004, Chavez joined Barrera and Torres at a hotel that they used in their illegal smuggling operation. Chavez believed that Garcia was going to "talk or snitch" and that Barrera and Torres "needed to take care of him." Chavez formulated a plan to kill Garcia and gave Barrera and Torres instructions. He told them that he would drop off Garcia at a park near the house where Garcia lived. Chavez instructed Barrera and Torres to drive to the park in a borrowed car. On the same day, Chavez, Barrera, and Torres went together to a house in the Houston area to borrow a green Impala. Torres did not know the owner of the car, but remembered picking up the car from someone's house.

Later that night, Torres drove Barrera to the park in the borrowed Impala. Torres parked the car nearby. Torres and Barrera waited in the car for about five minutes when Barrera received a phone call. After hanging up the phone, Barrera got out of the car and told Torres he would be right back. Around ten minutes later, Torres heard about seven gunshots. Barrera returned to the car and told Torres, "I shot him."

After the shooting, Torres drove to a small airport in Baytown as Chavez had instructed. However, they saw a Harris County sheriff patrolling and decided to meet Chavez at his father's house. Once there, Chavez instructed Torres and Barrera to drive to a house in Beaumont, where his friend Francisco Velasquez lived. Chavez told them he would meet them later.

Once Barrera and Torres reached Velasquez's house, they waited a few hours for Chavez. Chavez arrived at Velasquez's house with his brother. After Chavez arrived, he and his brother joined Barrera and Torres in a tent. Barrera gave Chavez the gun, and Chavez attempted to destroy the gun with a torch. The gun did not melt, and Torres did not see the gun after the attempt to melt it. Later, Torres drove home in the Impala. Barrera took the car from him. On the morning after the murder, Chavez met with Torres and instructed him not to tell anyone about the murder.

Viewing the evidence in the light most favorable to the verdict, we hold that legally sufficient evidence supports the jury's determination that Chavez was guilty as a party to Garcia's murder. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Laster*, 275 S.W.3d at 517.

## Conclusion

We conclude that the non-accomplice witness testimony sufficiently connects Chavez to Garcia's murder and that the evidence overall is legally sufficient to support Chavez's conviction for murder. We therefore affirm the judgment of the trial court.

Jane Bland
Justice

Panel consists of Justices Keyes, Bland, and Massengale.

Do not publish. *See* TEX. R. APP. P. 47.2(b).