

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-12-00435-CR

Andre **SCALES**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2011CR8106
Honorable Ron Rangel, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Karen Angelini, Justice
    Marialyn Barnard, Justice
    Rebeca C. Martinez, Justice

Delivered and Filed:  February 19, 2014

AFFIRMED

A jury convicted appellant Andre Scales of possession of a controlled substance with intent to deliver.  Based on the jury's recommendation, the trial court sentenced Scales to forty years confinement in the Texas Department of Criminal Justice–Institutional Division.  On appeal, Scales raises nine issues, claiming: (1) the trial court erred by failing to hold a hearing on his motion for new trial; (2) the trial court erred in denying the motion for new trial; (3) he was denied his right to counsel of choice; (4) he was denied his right to confront the witnesses against him because the trial court refused to require the State to disclose the identity of the confidential

informant; (5) the trial court erred in failing to instruct the jury the confidential informant's statements had to be corroborated; (6) the evidence is insufficient to corroborate the confidential informant's statements; (7) newly discovered evidence entitles him to a new trial; (8) the evidence is insufficient to support his conviction; and (9) the trial court erred by admitting "jail phone calls" during the punishment phase. We affirm the trial court's judgment.

## BACKGROUND

Detective William Roberts testified a confidential informant told him a man known to the informant as "Pimp" was selling drugs, specifically cocaine, out of apartment number 2805 in an apartment complex located at 9400 Fredericksburg Road, San Antonio Texas. The informant described Pimp as a black male, 5'8" tall who weighed approximately 185 pounds. The informant told Detective Roberts that Pimp had a gold tooth and was wearing a leg monitor. The detective stated the informant had "proven to be credible and reliable in the past on several occasions." Based on information provided by the informant, Detective Roberts and another detective conducted surveillance on the apartment complex, specifically apartment number 2805. Although during the surveillance, the detectives did not see anyone matching Pimp's description going in or out of apartment number 2805, Detective Roberts obtained a search warrant for the apartment in question based on the information provided by the informant.

After he obtained the search warrant, Detective Roberts and a number of other officers executed the warrant. The detective knocked, but no one answered. When he received no answer, the detective and the other officers forcibly entered the apartment. Upon entry, Detective Roberts said he saw a man, later identified as Andre Scales, in the apartment. Scales was wearing only shorts and the detective could see he was wearing a leg monitor. The detective also saw that Scales had a gold tooth. Detective Roberts admitted his informant's description of Pimp's height, as opposed Scales's actual height, "was off . . . [by] [t]wo inches." The detective identified Scales in

front of the jury as the man found in the apartment when the warrant was executed. No one else was found in the apartment.

During the search of the apartment, the officers noticed the only furniture in the front room of the apartment was a lawn chair – the type that comes in a bag and unfolds. The officers opened the chair and placed a handcuffed Scales in it. In the bedroom, which contained a single bed, officers found over eight grams of what was later determined to be cocaine. A small amount of cocaine was found in the bathroom closet. The officers found two grams of marijuana in the kitchen. In addition to the drugs, officers found a loaded handgun, "[t]wo electric gram scales" of the type typically used to weight narcotics, over $300 cash, and a receipt with Scales's signature on it. The receipt was found in the bathroom closet in a cardboard box with the handgun. The gun was actually laying on top of the receipt.

Detective Roberts testified that based on his experience, the amount of cocaine found, which he described as crack cocaine, is more than a person would have for personal use. He stated the amount found would constitute approximately 30–40 rocks of crack cocaine, which would sell for approximately $10–$20 per rock. As for the money found, it was in small denominations – ones, fives, tens, and twenties – which Detective Roberts said, based on his training and experience, "would be the amounts that narcotics users would spend per rock." No crack pipes were found in the apartment – another indication the cocaine was for distribution as opposed to personal use.

Detective Peter Wellman was called to the witness stand by the State. Detective Wellman testified he was part of the team that executed the search warrant on the apartment on Fredericksburg Road. Detective Wellman's role was to act as evidence custodian, i.e., collect the evidence and maintain custody of the evidence. Detective Wellman confirmed that when the team entered the apartment, Scales was the only person inside. Detective Wellman stated that when he

entered, Scales was being led out of the bathroom by other officers and it appeared he was either in the shower or had just gotten out of the shower when the officers entered the apartment because Scales wore only shorts and he was wet.

Detective Wellman testified that during the search he collected cocaine, marijuana, a loaded gun, a receipt with Scales name on it, electric gram scales, and approximately $360.00 in cash. The detective said he marked the items, photographed them, noted their location, and took custody of them. He took the items to the police station and processed them, which included field-testing the cocaine. The test was positive for cocaine. He then submitted all of the items to the property room from which the items would ultimately be submitted to the medical examiner's office for more precise testing. Detective Wellman described to the jury what was depicted in the photographs he took at the apartment. He also identified for the jury the items seized from the apartment, showing them the items, and describing how he had sealed and initialed the envelopes in which the items were kept after they were seized.

In addition to Detective Roberts and Wellman, the State called Detective Tina Baron and Detective Chad Nelson. These officers were also involved in the execution of the search warrant, and their testimony essentially corroborated that provided by the other detectives with regard to the actual search.

After the testimony of the detectives, the State called Robert G. Rodriguez to the stand. Rodriguez testified that prior to his retirement, which occurred only two months before the trial, he was a forensic scientist at the Bexar County Forensic Science Center. Rodriguez stated he worked specifically as a drug analyst. With regard to this case, Rodriguez testified he tested items seized during the execution of the search warrant. His testing showed police had seized more than four grams of cocaine from the apartment. On cross-examination, Rodriguez admitted he did not have any knowledge of who the cocaine belonged to.

Finally, the State called Alexis Quiroz from Bexar County Pretrial Services. Quiroz stated he worked in the "GPS section" of Bexar County Pretrial Services and was responsible for monitoring the leg monitor worn by Scales. Quiroz testified that for purposes of monitoring, Scales was supposed to reside at "9400 Fredericksburg Road, Apartment 2805, San Antonio, Texas, 78240." This is the location searched by Detective Roberts and the others, and the apartment in which Scales was found with the cocaine. Quiroz admitted that monitoring would not prevent others, including family members, from entering the apartment. He also admitted Scales was not listed on the lease; rather, another man, Antonio Canada[1], was listed as the lessee. Quiroz could not say whether Canada actually resided at the location.

After Quiroz testified, the State and Scales rested and closed. The court then read the charge to the jury, and the State and Scales presented closing arguments. Thereafter, the jury retired to deliberate and ultimately found Scales guilty of possession of a controlled substance with intent to deliver. After a punishment hearing, the jury recommended that Scales be confined for forty years. Based on this recommendation, the trial court sentenced Scales to forty years confinement. Scales perfected this appeal after his motion for new trial was denied.

## ANALYSIS

As noted above, Scales has raised nine issues on appeal. Specifically, he contends: (1) the trial court erred by failing to hold a hearing on his motion for new trial; (2) the trial court erred in denying the motion for new trial; (3) he was denied his right to counsel of choice; (4) his Sixth Amendment right to confront the witnesses against him was violated; (5) the trial court erred in failing to instruct the jury the confidential informant's statements had to be corroborated; (6) the evidence is insufficient to corroborate the confidential informant's statements; (7) newly

---

[1] Canada is Scales's brother.

discovered evidence entitles him to a new trial; (8) the evidence is insufficient to support his conviction; and (9) the trial court erred by admitting "jail phone calls" during the punishment phase.

### *Motion for New Trial*

Scales argues his first two issues, which concern the absence of a hearing on his motion for new trial and the denial of the motion, together. We will, therefore, address them together.

### *Lack of Hearing*

Scales first complains the trial court erred when it failed to hold a hearing on his motion for new trial. We review a trial court's decision to not hold hearing on a motion for new trial for an abuse of discretion. *Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993). The right to a hearing on a motion for new trial is not an absolute right. *Id.* Rather, to be entitled to a hearing on a motion for new trial, a defendant must raise grounds that are undeterminable from the record and reasonable, meaning they might entitle the defendant to relief. *Smith v. State*, 286 S.W.3d 333, 339–40 (Tex. Crim. App. 2009). If the defendant meets these criteria, the trial court must hold a hearing, and abuses its discretion if it does not. *Id.* The purpose of the hearing is to fully develop the issues raised in the motion. *Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994).

In his motion for new trial, Scales raised the following grounds: (1) denial of the right to counsel of choice; (2) denial of the right to confront witnesses against him, specifically the confidential informant; (3) jury charge error based on the failure to instruct the jury the confidential informant's statements had to be corroborated; and (4) newly discovered evidence establishes someone other than Scales was the person identified as "Pimp" by the confidential informant. We will address each issue in order to determine whether they were undeterminable from the record and might entitle Scales to relief. *See Smith*, 286 S.W.3d at 339–40.

Scales first contends he was entitled to a hearing on his motion for new trial based on his claim that he was denied the right to have the attorney of his choice. This issue was discussed in depth before voir dire began. Scales advised the trial court he felt he was entering the trial "blinded" because he hired Tony Jimenez, the lawyer who appeared with him at trial, only for purposes of seeking a bond reduction. After that, he told Jimenez his services were no longer needed. Scales told the trial court he ended his relationship with Jimenez "a long time ago." Scales asked the trial court if he could have "some time" to hire a lawyer "that I know can – is going to go in my benefit, that I'm comfortable with."

Jimenez advised the trial court that he received a discharge letter, which he read into the record. The letter stated Scales no longer wanted Jimenez to act as his attorney because he did not feel Jimenez would "represent him to the fullest in the courtroom" and did not feel "comfortable with your professionalism that you have displayed to him." The letter concluded by stating "we will no longer need your services." Jimenez did not recognize the person who signed the letter, but Scales stated it was signed by Chalee Moreland, the mother of Scales's children.

At this point, because Jimenez did not know who Chalee Moreland was, Scales began to yell at Jimenez, who apparently yelled back at Scales. Scales advised the trial court that Jimenez had been "talking smart to me the whole time." Jimenez told the trial court he had discussed the discharge letter with Scales and advised that he could discuss it with the trial court, which he did.

The trial court asked Scales how many attorneys he had used in this matter and Scales told him there had been three. The trial court noted Scales was indicted September 21, 2011, more than seven months before trial began. The court also noted there was a jury panel waiting outside and denied Scales's request for a continuance.

In his motion for new trial, Scales provided affidavits from three family members and his own "declaration," addressing the issue of who was to act as counsel for Scales at trial. We have

reviewed these affidavits and find they merely expand on the version of events relayed by Scales to the trial court on the record: Scales did not hire Jimenez for trial, but only for purposes of the bond reduction. This is the same claim heard by the trial court and we therefore hold it was determinable from the record. *See id.* Accordingly, no hearing on this issue was required.

The second issue raised by Scales in his motion for new trial was a violation of his Sixth Amendment right to confront the witnesses against him. With regard to this issue, Scales specifically complained in the motion about his inability to confront the confidential informant, who provided the information used by law enforcement to obtain the search warrant, but was never identified and never testified.

We hold the trial court did not abuse its discretion in refusing to hold a hearing based on this issue because the grounds upon which the issue is based are determinable from the record. *See id.* Detective Roberts testified extensively about what he was told by the informant, and Scales's counsel conducted an extensive cross-examination regarding the credibility of the informant and the detective's attempts to corroborate the informant's information. Moreover, this issue was not likely to entitle Scales to relief because during the trial, Scales never raised an objection about the informant's absence based on the Sixth Amendment, i.e., a violation of his right to confront the witnesses against him. *See Rios v. State*, 263 S.W.3d 1, 6 (Tex. App.—Houston [1st Dist.] 2005, pet ref'd) (holding complaint regarding Confrontation Clause of Sixth Amendment waived on appeal when defendant failed to object at trial); *see also* TEX. R. APP. P. 33.1(a). Thus, this issue was not reasonable. *See id.*

The third issue raised in the motion for new trial concerns the trial court's failure to instruct the jury in accordance with article 38.141 of the Texas Code of Criminal Procedure that the confidential informant's statements had to be corroborated. This issue is clearly determinable from the record. The record shows Scales failed to object to the absence of the instruction. Therefore,

to obtain relief, assuming without deciding it was error to refuse to submit the instruction, Scales must show egregious harm, i.e., such actual harm that he was denied a fair and impartial trial. *Huizar v. State*, 29 S.W.3d 249, 251 (Tex. App.—San Antonio 2000, pet. ref'd) (citing *Arline v. State*, 721 S.W.2d 348, 351–52 (Tex. Crim. App. 1986)).  To determine whether there was egregious harm, the court reviews the entire jury charge, the evidence, argument of counsel, and any other relevant information revealed by the record. *Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008).  Such a review was clearly possible and did not require further development of the evidence.  Accordingly, we hold the trial court did not err in refusing to hold a hearing on the motion for new trial based on the jury instruction issue.

Scales also based his motion for new trial on newly discovered evidence.  Scales claimed in the declaration attached to his motion for new trial that he was not the person known as "Pimp," but while he was in the Bexar County Jail, the person he knew as "Pimp" was placed in the same area of the jail as Scales.  Scales claims this man's name is Gerald Harps.  Scales alleged his proximity to Harps allowed him to learn "Pimp's" true name.  Scales presented the affidavits of two inmates who stated they knew Harps by the name "Pimp" and witnessed a confrontation between Scales and Harps.  One of the inmates averred Scales confronted "Pimp," stating he was not going to "do time" for something "Pimp" did.  The inmates also stated "Pimp" referred to Scales as a snitch.  Scales also produced, in a supplement to his motion for new trial, an affidavit from Harps.  Harps stated he is known as "Pimp," and he wished to take responsibility for the "things" found in the apartment.  He claimed Scales was the "wrong person."  Rule 21.7 of the Texas Rules of Appellate Procedure permits a trial court to determine a motion for new trial based on the receipt of evidence, i.e. evidence admitted at a hearing, or by affidavit.  Tex. R. App. P. 21.7.

To be entitled to a new trial based on newly discovered evidence, the defendant must show, among other things, that the new evidence is probably true and will probably result in a different result upon retrial. *Keeter v. State*, 74 S.W.3d 31, 35 (Tex. Crim. App. 2002). Scales's newly discovered evidence is comprised of: (1) his bare assertion that he was not the man known as "Pimp," and that he discovered the actual name of the man he knew as "Pimp," who was the one dealing drugs out of the apartment; (2) the statements of two inmates that they knew Harps by the name "Pimp"; and (3) a claim by Harps that the "things" in the apartment were his. We cannot say this evidence might entitle the defendant to relief. *See Smith*, 286 S.W.3d at 339–40. It is certainly possible there are two men who use the moniker "Pimp." Moreover, the record shows Scales was the one found in the apartment and that his ankle monitor was registered to the address where the drugs were found. Accordingly, we hold the trial court did not err in refusing to hold a hearing on the ground of newly discovered evidence.

Because Scales has failed to show his grounds were undeterminable from the record and reasonable, we hold he has not met his burden. We overrule his first issue.

### *Denial of Motion for New Trial*

In addition to complaining about the trial court's refusal to hold a hearing, Scales also complains the trial court erred in refusing to grant his motion for new trial. Scales bases this issue on the same complaints – right to counsel of choice, right to confront the confidential informant, refusal to instruct the jury on corroboration, newly discovered evidence. However, Scales does not provide any argument with regard to this second issue. Rather, he simply states: "it was error to not grant a new trial." This omission is fatal because a brief must contain a clear and concise argument for each contention made. *McGee v. State*, 342 S.W.3d 245, 247 (Tex. Crim. App. 2011) (citing TEX. R. APP. P. 38.1(i)). If the appellant fails to provide an argument in support of his issue, the matter is inadequately briefed and nothing is presented for appellate review. *McGee*, 342

- 10 -

S.W.3d at 247–48 (citing *Garcia v. State*, 887 S.W.2d 862, 876 (Tex. Crim. App. 1994), *overruled on other grounds by Hammock v. State*, 46 S.W.3d 889 (Tex. Crim. App. 2001) (noting issue was inadequately briefed when there was no explanation or argument)). Accordingly, we hold Scales has presented nothing for our review with regard to the actual denial of the motion for new trial and we overrule this issue.

### *Counsel of Choice*

Scales next complains he was denied his Sixth Amendment right to counsel of his own choosing. On April 30, 2012, the first day of trial, attorney Tony Jimenez appeared with Scales. Just before voir dire was to begin, the trial court acknowledged that Scales desired to speak to the trial court. Upon leave, Scales stated:

> Oh. I would like to say that first that I was really like coming to this trial like blinded, though, sir. Like I was coming like not none of this. I had excused [Tony Jimenez] off my case a long time ago. I paid him for a bond reduction, so I was just trying to let y'all [sic] know. I had paid him for a bond reduction. I talked to him, told him a long time ago. I had emailed him and everything. I got the paper and I got everything right here that I had to let him go a long time ago, sir, and this trial right here just caught me blinded. There was nothing like really settled on those cases or nothing like that. So I'm just –

At that point, the trial court asked Scales what he wanted. Scales stated he needed time to hire a lawyer that he was "comfortable with."[2] The trial court noted Scales was indicted on September 21, 2011. The trial court asked Scales how many attorneys he'd had throughout the case, and Scales told the court he had three previous attorneys. The trial court then denied the request for a continuance.

---

[2] Later, in support of this claim in his motion for new trial, Scales provided affidavits from three family members and his own "declaration," addressing the issue of who was to act as counsel for Scales at trial. Scales's declaration and these affidavits merely expand on the version of events relayed by Scales to the trial court on the record: Scales did not hire Jimenez for trial, but only for purposes of the bond reduction.

After Scales's request for a continuance was denied, Jimenez advised the court that on April 27th, just three days before trial, he had received a letter, via facsimile from some unknown person, stating Scales no longer desired his representation because Scales did not feel Jimenez would "represent him to the fullest in the courtroom and does not feel comfortable with your professionalism that you have displayed to him." Jimenez read the letter into the record.

Thereafter, the trial court advised the parties that a jury panel was waiting outside and the court had "been waiting a while to bring this case to trial." The court reiterated that it was denying the motion for continuance and ordered the venire brought into the courtroom.

The constitutional right to the assistance of counsel includes the defendant's right to obtain that assistance from retained counsel of his choosing. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006); *Gonzalez v. State*, 117 S.W.3d 831, 836-37 (Tex. Crim. App. 2003). However, the right to counsel of choice is not absolute. *Gonzalez*, 117 S.W.3d at 837. Among other things, a trial court has wide latitude in balancing the right to counsel of choice against the needs of fairness and the demands of its calendar. *Gonzalez-Lopez*, 548 U.S. at 151–52. "Trial judges necessarily require a great deal of latitude in scheduling trials. . . . Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

A defendant's right to select his own counsel cannot be manipulated so as to obstruct orderly court procedure or to interfere with the fair administration of justice. *Webb v. State*, 533 S.W.2d 780, 784 (Tex. Crim. App. 1976). A defendant may not wait until the day of trial to demand different counsel or to request that counsel be dismissed so that he may retain other counsel. *Id.* When competent counsel is available and fully prepared to represent the defendant,

a trial court does not abuse its discretion by denying an untimely request for continuance based on the unavailability of the defendant's counsel of choice. *Slappy*, 461 U.S. at 12–13; *see also id.* at 19 (Brennan, J., concurring).

In this case, Scales's claim that he hired Jimenez solely for the purpose of seeking a bond reduction is not borne out by the record. After the trial court reiterated its ruling, Jimenez made certain representations to the court that were not contested by Scales. First, Jimenez told the trial court that he had advised Scales the trial judge would be the better choice for purposes of determining punishment. Scales admitted he was so advised, but disagreed with the attorney's recommendation. Second, Jimenez asked if the State would read the plea agreement, which was previously rejected by Scales, into the record. The prosecutor stated Scales was offered, with regard to all pending cases, twenty-five years confinement and a $1,500.00 fine. The State had agreed to have the twenty-five years run concurrently with certain other sentences and agreed to waive any deadly weapon finding. The State noted the range of punishment in the case was 15 to 99 years or life because of the "repeater count" in the indictment.

After the State provided the terms of the rejected plea agreement, the following exchange occurred between Jimenez and Scales:

> MR. JIMENEZ: . . . Those plea offers were *explained to you in court the last time we met*; is that correct?
>
> THE DEFENDANT: *Yeah.* The 15 years, yes, sir. *You never told me the 15 to life. You ain't never told me 99 years, though.*
>
> MR. JIMENEZ: *Did I not explain to you the repeater status of the indictment, that you would start at 15 up to 99? Didn't I – didn't I explain that to you?*
>
> THE DEFENDANT: *Not 15 to 99.* No, he didn't, sir. Not trying to – no, you didn't. *You said 15.* It would start at 15. *Yes, sir, you did say that. You told me – you came at me with 27.* It started off at 25. *That's the first offer you told me.* It started off at 25, sir, you did tell me that I can get 15. Now – right now you just

told me I can get 15. It'd start off at 15 if I'm found guilty, 15 each case. Yes, sir, you didn't tell me that.

(emphasis added).

This exchange shows Jimenez appeared on behalf of Scales on matters other than the bond reduction. The two men discussed the terms of the State's plea offer and the range of punishment, which is a matter unrelated to bond reduction. They also seemed to have discussed whether Scales should elect the judge or jury with regard to assessment of punishment. The exchange negates Scales's assertion to the court that he talked to Jimenez "a long time ago" and emailed him, telling him his representation was no longer required. Thus, based on what the trial court heard, it seemed as if Scales were attempting to change attorneys on the day of trial in order to delay the proceedings.

Based on the record, and discounting the letter from some unknown person to Jimenez three days before trial, it seems Scales waited until the day of trial to voice his dissatisfaction with Jimenez. Under the circumstances, the trial court could reasonably believe Scales was manipulating his right to counsel to delay the trial. Though Scales claimed he had "excused" Jimenez "a long time ago," there is nothing in the record, other than Scales's assertion, to support this. Moreover, the exchange set forth above belies Scales's allegation that Jimenez was hired only for the purpose of seeking a bond reduction.

In addition, resetting the trial, with a venire of potential jurors waiting outside, would have disrupted orderly court procedure and greatly inconvenienced not only the trial court, but the potential jurors who had been waiting. And, as noted by the trial court, Scales was indicted in September of 2011, there is no dispute the case was on the Felony Inventory Reduction Plan, and Scales had three attorneys between the time of the indictment and trial. Jimenez appeared

extremely familiar with the case, and thus competent counsel was available and fully prepared to represent Scales. *See Slappy*, 461 U.S. at 12–13.

Accordingly, we hold the trial court did not violate Scales's right to counsel of choice by refusing his last minute request for a continuance for the purpose of obtaining yet a fourth attorney. We overrule issue three.

### *Right to Confront Confidential Informant*

In his fourth appellate issue, Scales contends his rights under the Sixth Amendment of the United States Constitution and article 1, section 10 of the Texas Constitution were violated because he was not permitted to confront the confidential informant who provided the information to Detective Roberts that resulted in the search.[3] We hold Scales has failed to preserve the issue for our review.

To preserve a complaint for our review, the complaining party must make a timely, specific objection in the trial court. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *Rios*, 263 S.W.3d at 6; TEX. R. APP. P. 33.1(a). Moreover, a defendant's trial objection must comport with his complaint on appeal. *Lasher v. State*, 202 S.W.3d 292, 295 (Tex. App.—Waco 2006, pet. ref'd). Generally, these preservation rules apply even to alleged constitutional error, including claimed error under the Sixth Amendment. *Rios*, 263 S.W.3d at 5. This is true even in light of the Supreme Court's decision in *Crawford*, because *Crawford* did not address preservation of constitutional error. *Id.* Numerous courts have held that issues under the Confrontation Clause of the Sixth Amendment were waived on appeal when the defendant failed to object at trial or his

---

[3] Because Scales presents no argument or authority that the Texas Constitution provides protection different from that provided by the United States Constitution in the context of the right to confrontation, we make no distinction between his state and federal claims. *See Segundo v. State*, 270 S.W.3d 79, 96 n.59 (Tex. Crim. App. 2008) (citing *Muniz v. State*, 851 S.W.2d 238, 251–52 (Tex. Crim. App. 1993)); *Smith v. State*, 898 S.W.2d 838, 847 (Tex. Crim. App. 1995) (en banc); *Agbogwe v. State*, 414 S.W.3d 820, 832 n.3 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

trial objection failed to comport with his complaint on appeal. *See, e.g., Rios*, 263 S.W.3d at 6–7; *Lasher*, 202 S.W.3d at 295; *Courson v. State*, 160 S.W.3d 125, 129 (Tex. App.—Fort Worth 2005, no pet.); *Crawford v. State*, 139 S.W.3d 462, 464 (Tex. App.—Dallas 2004, pet. ref'd); *Bunton v. State*, 136 S.W.3d 355, 368–69 (Tex. App.—Austin 2004, pet. ref'd).

The record shows Scales objected to the search warrant and Detective Roberts's testimony about what he was told by the confidential information on the ground that the affidavit supporting the warrant was insufficient. More specifically, Scales claimed the information in the affidavit was conclusory, failing to provide specific information with regard to the informant's reliability. Scales's counsel specifically stated he was "not attempting to exposure [sic] the informant. That may be a prior issue, but that's not my intent." When Scales questioned the officer outside of the jury's presence with regard to this issue, Scales asked for information about the confidential informant – specific cases for which the informant had provided evidence, the number of cases for which the informant had provided information, and whether the informant had a criminal history. He then renewed his sufficiency objection. Nowhere in the record did Scales mention the Sixth Amendment, the Confrontation Clause, or article 1, section 10. Scales did not use the phrase "right to confront" nor use the word confrontation. He made no statement that could be considered an objection to the violation of his right to confront the confidential informant. Rather, his only objection with regard to the informant was the potential insufficiency of the affidavit supporting the warrant due to lack of specifics about the informant's credibility.

In *Crawford v. Washington*, the Supreme Court held that out-of-court testimonial statements by a witness, who fails to testify at trial, are barred by the Sixth Amendment's confrontation clause unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable. 541 U.S. 36, 59–65 (2004). *Crawford* was decided in 2004, and thus the concepts

discussed therein are not new. Scales made no objection based on *Crawford* or the Sixth Amendment. The objection made by Scales is not synonymous or co-extensive with an objection under the Sixth Amendment and its right to confront witnesses. Accordingly, because Scales failed to lodge an objection based on the Sixth Amendment, we hold he has waived his right to review and overrule this issue. *See Rios*, 263 S.W.3d at 6–7; *Lasher*, 202 S.W.3d at 295.

### *Jury Instruction – Corroboration of Confidential Informant Statements*

In this issue, Scales contends the trial court was required to instruct the jury that statements from the confidential informant about a man named Pimp selling drugs from the apartment required corroboration. For this contention, Scales relies on article 38.141 of the Texas Code of Criminal Procedure, which requires that testimony presented by a person "who is acting covertly on behalf of a law enforcement agency or under color of law enforcement" must be corroborated by other evidence connecting the defendant to the crime in question. TEX. CODE CRIM. PROC. ANN. art. 38.141(a) (West 2008).

In interpreting article 38.141, courts have referred to article 38.14, which contains substantially similar language with regard to corroboration of accomplice-witness testimony. *Simmons v. State*, 205 S.W.3d 65, 71 (Tex. App.—Fort Worth 2006, no pet.); *see* TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2008). The purpose of article 38.14 is to ensure that a jury does not consider an accomplice-witness's testimony unless there is other corroborating evidence. *Simmons*, 205 S.W.3d at 72. The principle underlying the rule is that an accomplice-witness's testimony is questionable because he might have his own reasons for testifying – a deal with the authorities or other favorable treatment. *See id.* (citing *Beathard v. State*, 767 S.W.2d 423, 429 (Tex. Crim. App. 1989)). The same underlying principle is applicable to informants or other covert witnesses who may work for law enforcement for their own self-interested reasons. *Simmons*, 205 S.W.3d at 72.

When the State elicits testimony from an article 38.14 accomplice for the purpose of proving a defendant's guilt, the defendant is entitled to an instruction that a conviction cannot be based on the accomplice testimony unless the jury believes the testimony to be true, and unless there is other evidence tending to connect the defendant to the offense. *Id.* at 77 (citing *Herron v. State*, 86 S.W.3d 621, 631 (Tex. Crim. App. 2002)). Courts have held, given that articles 38.14 and 38.14 share the same underlying principle, that similar instruction is necessary when the State relies on testimony requiring corroboration under article 38.141. *See Simmons*, 205 S.W.3d at 76.

However, the mandate of article 38.141 with regard to a jury instruction is inapplicable in this case because the confidential informant who relayed information to Detective Roberts *did not testify at trial*. In the cases in which courts have found error in the failure to provide a corroboration instruction under either article 38.14 or article 38.141, the accomplice or informant has actually *testified* at trial. *See, e.g., Herron v. State*, 86 S.W.3d 621, 631 (Tex. Crim. App. 2002) (applying article 38.14); *Coutta v. State*, 385 S.W.3d 641, 658–59 (Tex. App.—El Paso 2012, no pet.) (applying article 38.14); *Simmons*, 205 S.W.3d at 69–70, 76 (applying article 38.141); *Hall v. State*, 161 S.W.3d 142, 149 (Tex. App.—Texarkana 2005, pet. ref'd) (applying article 38.14); *Jefferson v. State*, 99 S.W.3d 790, 792–93 (Tex. App.—Eastland 2003, pet. ref'd) (applying article 38.141); *Cantelon v. State*, 85 S.W.3d 457, 459 (Tex. App.—Austin 2002, no pet.) (applying article 38.141). This is in accord with the very language of these articles, which each state a person may not be convicted solely on "the testimony" of an accomplice or a person acting covertly on behalf of the authorities. *See* TEX. CODE CRIM. PROC. ANN. arts. 38.14, 38.141.

Because the confidential informant did not actually testify in this case, the requirement of a corroborating instruction pursuant to article 38.141 was inapplicable. Accordingly, we overrule issue number five.

*Insufficient Evidence to Corroborate Confidential Informant Testimony*

Scales's sixth issue is based on the same argument as the previous issue, i.e., corroboration of the testimony of the confidential informant. In this issue, however, he contends there is insufficient evidence to corroborate the confidential informant's testimony as required by article 38.141. For the same reasons we overruled his issue relating to the lack of a jury instruction under article 38.141, we overrule this issue. The confidential informant did not testify. Hence, there was no testimony to corroborate.

*Newly Discovered Evidence*

Scales next contends the trial court erred in denying his motion for new trial based on the newly discovered evidence he presented. Scales contends this evidence establishes he was not the person known as "Pimp."

Pursuant to article 40.001 of the Texas Code of Criminal Procedure, a motion for new trial must be granted "where material evidence favorable to the accused has been discovered since trial." TEX. CODE CRIM. PROC. ANN. art. 40.001 (West 2006). It is within the trial court's discretion to grant or deny a new trial based on newly discovered evidence, and we will not reverse the trial court's ruling absent an abuse of discretion. *Jones v. State*, 234 S.W.3d 151, 157 (Tex. App.—San Antonio 2007, no pet.) (citing *Keeter*, 74 S.W.3d at 37; *Shafer v. State*, 82 S.W.3d 553, 556 (Tex. App.—San Antonio 2002, pet. ref'd)). To establish an abuse of discretion when the trial court denies a motion for new trial based on newly discovered evidence, the complaining party must show: (1) the evidence was unknown or unavailable to him before trial; (2) his failure to discover the new evidence was not due to a lack of diligence; (3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and its materiality would probably result in a different outcome after a new trial. *Id.*

If the complaining party fails to establish even one of these elements, we cannot say the trial court abused its discretion. *Jones*, 234 S.W.3d at 157 (citing *Schafer*, 82 S.W.3d at 556).

As discussed above, Scales claimed in the declaration attached to his motion for new trial that he was not the person known as "Pimp," but while he was in the Bexar County Jail, the person he knew as "Pimp" was placed with him in the same area of the jail. Scales claims his proximity to the man allowed him to learn his true name – Gerald Harps.

Scales presented the affidavits of two inmates who stated they knew Harps by the name "Pimp" and one witnessed a confrontation between Scales and Harps. According to one of the inmates, it appeared to him that Scales and "Pimp" knew each other. "Pimp" accused Scales of being a snitch, and later Scales confronted "Pimp," stating he was not going to "do time" for something "Pimp" did. The second inmate merely stated Harps went by the name "Pimp" and Harps referred to Scales as a snitch.

Scales also produced, in a supplement to his motion for new trial, an affidavit from Harps. In that affidavit, Harps averred he is known as "Pimp," and he wished to "take responsible action . . . do not want to see an innocent man be punished . . . things that were found were mine, the person the State has is the wrong person."

In sum, Scales's newly discovered evidence is comprised of: (1) his bare assertion that he was not the man known as "Pimp," and that he discovered the actual name of the man he knew as "Pimp," who was the one dealing drugs out of the apartment; (2) the statements of two inmates who claimed they knew Harps by the name "Pimp" and one of them saw Scales accusing Harps of possessing the drugs; and (3) Harps's claim that he was the perpetrator. We hold Scales has failed to establish the new evidence is probably true and its materiality would probably result in a different outcome after a new trial.

First, it is certainly possible there are two men who use the moniker "Pimp." *See, e.g., Blue v. State*, No. 04-11-00726-CR, 2012 WL 4095988, at *2 (Tex. App.—San Antonio Sept. 19, 2012, pet. ref'd) (mem. op., not designated for publication) (noting drug dealer went by nickname "Pimp"); *Akeen v. State*, No. 05-04-01639-CR, 2006 WL 29103, at *2 n.9 (Tex. App.—Dallas Jan. 6, 2006, no pet.) (not designated for publication) (noting individual arrested with capital murder co-conspirator was referred to as "Pimp"); *Rose v. State*, No. 05-97-00247-CR, 1999 WL 436863 (Tex. App.—Dallas June 30, 1999, no pet.) (not designated for publication) (noting drug dealer was known as "Pimp Hoe" or "Hoe Pimp"). Second, Harps's affidavit is vague and ambiguous. He states the "things" found in the apartment "raid" were his. He does not identify the "things" that were his – drugs, money, firearm – and does not give the apartment number in which the "things" were found or its location, only the name of the complex. Harps's name is not on the lease and there is nothing, other than his bare assertion, to connect him to the apartment or the contraband found therein. Moreover, Scales had previously shown his willingness to try to convince others to take the blame for him.

In a jailhouse telephone call between Scales and his brother, which was admitted at the punishment phase, Scales fervently tried to convince his brother, Antonio Canada, to create and sign an affidavit stating that Canada was actually the person known as "Pimp," and that the apartment and the drugs belonged to Canada, not Scales.[4] Scales told Canada it was unlikely he would be arrested, but if he was, Scales had money to bond him out of jail and hire an attorney for him. In the phone call, Scales sounded desperate, advising his brother that if he refused to take the blame, Scales might go to prison for life. Finally, the record shows Scales was the one found

---

[4] In his ninth issue, Scales contests the admissibility of the recorded telephone call. We address the issue below, but note here that we find it without merit.

in the apartment and that his ankle monitor was registered to the address where the drugs were found.

The trial court could have reasonably determined Scales successfully convinced Harps and the two other inmates to provide affidavits that were favorable to his version of events. Additionally, the affidavits failed to explain why a freshly-showered Scales was the only one in the apartment with the drugs, money, and weapon. Accordingly, we cannot say the trial court abused its discretion in failing to grant Scales's motion for new trial based on newly discovered evidence.

### *Sufficiency of Evidence*

In his eighth issue, Scales claims the evidence is legally insufficient to support his conviction. More specifically, Scales contends there is no evidence to establish he exercised care, custody, or control over the drugs seized from the apartment. We disagree.

When we review a legal sufficiency challenge, we must review all of the evidence in the light most favorable to the verdict to determine whether a rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Hines v. State*, 383 S.W.3d 615, 623 (Tex. App.—San Antonio 2012, pet. ref'd). Circumstantial and direct evidence are reviewed in the same manner, and "'circumstantial evidence alone can be sufficient to establish guilt." *Id.* (quoting *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012)). Under this standard of review, we must uphold the jury's verdict "unless a rational factfinder must have had reasonable doubt as to any essential element." *Hines*, 383 S.W.3d at 623 (quoting *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009)).

To prove a defendant unlawfully possessed a controlled substance, the State must prove he exercised control, management, or care over the substance and knew the substance possessed was contraband. *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); see TEX. HEALTH &

SAFETY CODE ANN. § 481.002(38) (West 2010) (defining possession as "actual care, custody, control, or management"). When the defendant is not in exclusive possession of the place where the controlled substance is found, as in this case, independent facts and circumstances must affirmatively link the defendant to the substance such that it can be reasonably concluded that he possessed the substance and had knowledge of it.[5] *See Medina v. State*, No. 01-10-01135-CR, 2011 WL 6013094, at *3 (Tex. App.—Houston [1st Dist.] Dec. 1, 2011, pet. ref'd) (citing *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005)). "This rule simply [reflects] the common-sense notion that a person–such as a father, son, spouse, roommate, or friend–may jointly possess property like a house but not necessarily jointly possess the contraband found in that house." *Medina*, 2011 WL 6013094, at *3 (quoting *Poindexter*, 153 S.W.3d at 406).

Mere presence at the place where contraband is found is, by itself, insufficient to establish care, custody, or control. *Evans*, 202 S.W.3d at 162. However, presence, when combined with other direct or circumstantial evidence, i.e., links, may be sufficient to establish care, custody, or control beyond a reasonable doubt. *Id.* The Texas Court of Criminal Appeals has described links that may circumstantially establish the sufficiency of the evidence to prove knowing possession. *See Evans*, 202 S.W.3d at 162 n.12. These links include:

- the defendant's presence at the time of the search;
- whether the contraband was in plain view;
- the defendant's proximity to, and the accessibility of, the contraband;
- whether the defendant was under the influence when arrested;
- whether the defendant possessed other contraband when arrested;
- whether other contraband or drug paraphernalia were present;
- whether the defendant made incriminating statements when arrested;
- whether the defendant attempted to flee;
- whether the defendant made furtive gestures;
- whether the defendant had a right to possess the place where the contraband was found;

---

[5] The record shows that although Scales was found in the apartment, and the apartment was listed as his residence for purposes of his leg monitor, the name on the lease was Antonio Canada – Scales's brother.

- whether the place where the contraband was found was enclosed;
- whether the defendant was found with a large amount of cash; and
- whether the defendant's conduct indicated a consciousness of guilt.

*Id.* at 162. The number of links is not dispositive; rather it is "the logical force of all of the evidence, direct and circumstantial[,]" that makes the evidence sufficient. *Id.* at 162. Moreover, these links are simply some facts that may establish the sufficiency of the evidence with regard to knowing possession, but they are not to be considered a litmus test. *Id.* at 162 n.12.

In this case, the evidence shows Scales was found alone in the apartment where the drugs were discovered. Although Scales's brother was listed as lessee on the lease, for purposes of his leg monitor, Scales was supposed to reside at 9400 Fredericksburg Road, apartment 2805 – the very place Scales and the drugs were found at the time of the search. When police entered the apartment, Scales wore only shorts and it appeared as if he had just showered. As the informant described, Scales was an African American with a gold tooth, wearing a leg monitor. Admittedly, the informant was off by two inches with regard to Scales's height; however, he was correct with regard to the rest of his description.

In the apartment there was little furniture – a folding chair and a single bed. Officers found drugs in the bedroom and bathroom closets. Marijuana was found in the kitchen. Officers also found a loaded handgun, two scales typically used to weigh narcotics, and $300 cash. During the search, officers found a receipt with Scales's name on it. The receipt was found in the same box in which the gun was found – the gun was on top of the receipt.

Viewing the evidence in the light most favorable to the verdict, we hold "the logical force of all of the evidence, direct and circumstantial[,]" was sufficient for the jury to find Scales possessed a controlled substance, i.e., he exercised control, management, or care over the substance and knew the substance possessed was contraband. *See Evans*, 202 S.W.3d at 161, 162

n.12; TEX. HEALTH & SAFETY CODE ANN. § 481.002(38). Accordingly, we overrule Scales's sufficiency challenge.

### *Admission of Jailhouse Calls*

At the punishment phase of the trial, the State introduced, and the trial court admitted, a recorded telephone conversation between Scales and certain family members, including Scales's brother, Antonio Canada. In that call, which Scales made from the Bexar County Jail, Scales attempted to convince Canada to prepare and sign an affidavit admitting: (1) Canada was the person known as Pimp; (2) the apartment in which the drugs were found belonged to Canada; and (3) the drugs found in the apartment belonged to Canada. In other words, Scales wanted his brother to take responsibility for the offense for which Scales was indicted and to explain that Scales did not previously advise law enforcement of the fact that Canada was the person known as Pimp and owned the drugs because Scales did not want to tell on his brother. Scales pleaded with Canada, stating "I need you, dog." Scales advised his brother it was unlikely he would be arrested, but if he were, Scales had sufficient funds to bond Canada out of jail and would make sure Canada had an attorney. Scales told his brother that if he refused to complete and sign the affidavit, Scales would go to prison for ninety-nine years, but that if he signed the affidavit, Scales could be out immediately.

Scales objected to the introduction of the phone call, arguing that under Rule 403 of the Texas Rules of Evidence the telephone call's probative value was outweighed by its prejudicial effect. The trial court overruled the objection and the recording was played for the jury. Scales contends the trial court erred in admitting the recording.

A trial court possesses wide latitude in determining what evidence is admissible at the punishment phase, and the court's decision will not be overturned absence an abuse of discretion. *Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003); *Sanders v. State*, 255 S.W.3d

754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd) (citing *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim. App. 1990) (op. on reh'g)).  The appellate court must recognize the trial court's superior position with regard to gauging the impact of relevant evidence and decline to reverse any decision under Rule 403 unless the decision is outside the zone of reasonable disagreement. *Sanders*, 255 S.W.3d at 760.  Despite the wide latitude afforded to trial courts, the admitted evidence must satisfy Rule 403, which governs admission of potentially prejudicial evidence.  Rule 403 states, in pertinent part: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]"  TEX. R. EVID. 403.  Evidence is only inadmissible as unfairly prejudicial if it has an undue tendency to suggest the jury make a decision on an improper basis, "commonly an emotional one." *Sanders*, 255 S.W.3d at 760 (citing Montgomery, 810 S.W.2d at 389).

When a defendant makes a Rule 403 objection, as Scales did in this case, the trial court must balance the probative value of the evidence against its potentially prejudicial effect. *See Montgomery*, 810 S.W.2d at 388.  We must presume the probative value will outweigh any prejudicial effect. *Sanders*, 255 S.W.3d at 760 (citing *Montgomery*, 810 S.W.2d at 389).  In reviewing this determination, we will reverse the trial court's decision "only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009).  The exclusion of evidence based on Rule 403 is "a remedy that should be used sparingly." *Id.*

A proper Rule 403 analysis, either by the trial court or the appellate court, includes, but is not limited to the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004).

Here, the telephone recording was probative with regard to a punishment determination because it allowed the jury to gauge Scales's acceptance of responsibility for the crime. The recording showed Scales was willing to allow his own brother to take responsibility for his crime, even if it meant his brother would be arrested, requiring money for bond and an attorney.

With regard to the potential to impress the jury in some irrational, but nevertheless indelible way, and the amount of time taken by the State to develop the evidence, we hold neither supports Scales's contention that the trial court abused its discretion. The telephone recording itself lasted a mere fifteen minutes, and the State presented two witnesses, one to establish the reliability of the recording, and another to verify Scales's voice on the recording. In the context of the entire punishment hearing, presentation of the evidence relating to the telephone recording was restrained. Moreover, the recording paled in comparison to the other evidence admitted at the punishment phase in both time and impression on the jury. Evidence was presented showing other crimes or bad acts committed by Scales, specifically:

- a 2005 robbery conviction;

- the 2008 commission of a burglary that resulted in an assault;

- a 2009 arrest for the offense of felon in possession of a firearm, after police approached Scales's vehicle because of a strong odor or marijuana emanating from the vehicle; and

- the 2010 execution of a narcotics search warrant, which was issued in Scales's name for an apartment in which Scales resided; the search yielded over 7 grams of crack cocaine, two firearms, ammunition, and approximately $3,500 cash;

Given the force of the other evidence of "bad acts" presented at the punishment phase, we hold the admission of the telephone recording was not likely to create such unfair prejudice in the minds of the jurors that they sentenced Scales in a way disproportionate to his crime and past criminal history.

Admittedly, the State's need to use the telephone recording at the punishment phase was slight. The State, as set out above, presented a great deal of evidence establishing Scales's criminal history and apparent refusal to learn from his past mistakes. However, given the presumption that the telephone recording was more probative than prejudicial, and evaluating in it light of all of the Rule 403 facts, we cannot say the trial court's decision to admit the recording was outside the zone of reasonable disagreement. We therefore overrule issue nine.

## CONCLUSION

Based on the foregoing, we overrule all of Scales's issues. Accordingly, we affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish